**JAMES, County Treas., et al. v. STATE ex rel. FINNEY, County Atty., et al.**

No. 19989.   Opinion Filed Feb. 9, 1932.

Withdrawn, Corrected, Refiled, and Rehearing Denied Nov. 1, 1932.

Tomerlin & Chandler, Troy Shelton, John O. Head, and George H. Montgomery, for plaintiffs in error.

L. E. Mifflin, Co. Atty., and Tom Finney, for defendants in error.

RILEY, J. This is an appeal from the judgment rendered in the district court of McCurtain county in an action brought by the state of Oklahoma on the relation of the county attorney of McCurtain county and the board of county commissioners of said county, herein referred to as plaintiffs, against Mayo James, county treasurer of said county, and the American Surety Company, surety on his official bond, the Tradesmens National Bank of Oklahoma City, and A. J. Waldock, herein referred to as defendants. The action, however, was dismissed before the trial as to the defendant Tradesmens National Bank.

The action was brought to recover the sum of $24,000, alleged to have been lost to McCurtain county because of alleged breach of duty of defendant James, as county treasurer, in that defendant James, as county treasurer, had delivered certain funding bonds issued in a proceeding brought in the district court for the purpose of funding certain judgment and warrant indebtedness of the county, to parties other than the owners and holders of such judgment and warrant indebtedness after said bonds had been signed by the judge of the district court and delivered to said defendant Mayo James, as county treasurer, as provided by section 4270, C. O. S. 1921. Before the trial in the district court, the defendant A. J. Waldock was granted a severance or separate trial. Judgment was for the sum of $7,889.56. The parties agree that this amount had never been paid to the county treasurer out of the proceeds of the funding bond issue above mentioned. Funding bonds were issued in the amount of $66,000. About $14,000 of the indebtedness funded was in the form of judgments rendered against the county in favor of several different parties. Defendant James, as county treasurer, and R. C. Oldham, his predecessor in office, had theretofore paid some of said judgments out of the sinking fund of the county and had taken assignments of the judgments from the several judgment creditors amounting to something over $9,000, and the county treasurer had also bought some of the warrants out of the sinking fund of the county. One-third of some of the judgments had been paid by a tax levy made for that purpose. In funding the county indebtedness the balance due on the judgment so held by the county treasurer was included. The warrant indebtedness funded, some of which was held by the county treasurer as investments of the sinking fund of the county, amounted to about $49,000, and some of the judgments

so funded were held by parties other than the county treasurer. The board of county commissioners had entered into a purported agreement with A. J. Waldock, described therein as owner and holder of the judgment and warrant indebtedness sought to be funded. The application, or petition to fund, alleged that the county commissioners had agreed with the owners and holders of the judgment and warrant indebtedness of the county, and contained the complete list of the judgments and warrants sought to be funded, in which was included the judgments and warrants held by the county treasurer for the benefit of the sinking fund of the county. Prior to the issuance of said bonds the board of county commissioners had entered into an agreement with the Piersol Bonding Company of Oklahoma City for the sale of the bonds, when issued, to said bonding company. The judgment of the court authorizing said bond issue contained the following clause:

"And the court now in open court sign said bonds his act being attested as aforesaid under the seal of said court, and does now deliver the same, so signed, to the clerk of said court, to be by him delivered to the treasurer of said county, after the time for taking an appeal has expired, if no appeal be taken, the said treasurer to have said bonds indorsed, registered and approved as required by law, and to deliver the same to the owners and holders of the warrants and judgments funded thereby upon cancellation of said warrants and judgments which is now surrendered to him for that purpose."

After the bonds had been so signed by the judge and delivered to defendant James as provided in the above order, he delivered the bonds to the Attorney General for approval, and wrote the Attorney General a letter directing him to deliver the bonds, after he had approved them, to the Tradesmens National Bank of Oklahoma City, and then wrote said bank to hold the bonds subject to the order of A. J. Waldock, trustee, and that Waldock would instruct said bank as to their final disposition. Thereafter the Tradesmens National Bank, under an order from A. J. Waldock, delivered the bonds to the Piersol Bonding Company and remitted to A. J. Waldock $66,000, the proceeds of the sale of said bonds. Waldock deposited the money in a bank at Idabel in his name as trustee. Waldock never paid to McCurtain county, or the county treasurer, $7,822.56, the balance due on the judgments and $67 due on the warrants held by the county treasurer for the sinking fund of the county.

The trial court under an agreed statement of facts showing the transaction substantially as above set out directed a verdict for plaintiff in the sum of $7,889.56, and defendants appeal.

The position of plaintiff is that defendant James, as county treasurer, is liable for the loss because he failed and neglected to deliver the bonds to the owner and holder of the indebtedness so funded. That is, the plaintiffs contend that A. J. Waldock, trustee, was not the owner and holder of the judgment and warrants held by the county treasurer for the benefit of the sinking fund of the county, and that of the bonds so issued, to the amount of indebtedness held by the county for the benefit of the sinking fund, defendant James had delivered them to a party not authorized to receive them, and that instead of so doing he should have retained the bonds to that amount for the benefit of the county in lieu of the judgment and warrant indebtedness held by him as county treasurer included in the funding proceedings.

The defendants contend that although Waldock, as trustee, was not in fact the owner and holder of said judgment and warrant indebtedness, he had been recognized as such by the county commissioners and the district court for the purpose of the funding proceedings, and for the purpose of showing that the county had agreed with the owner and holder of judgment and warrant indebtedness of the county sought to be funded that the bonds might be issued for that purpose. They also contend that in effect Waldock had been adjudged by the court in said funding proceedings to be such owner and holder and that thereby the county was estopped to deny that he was such owner and holder and that the county was bound by the judgment of the court, which, they say, in effect adjudged Waldock, as trustee, to be such owner and holder, and that defendant James was justified in recognizing him as such and in delivering all of the bonds to Waldock as trustee.

The so-called agreement between Waldock and the county commissioners reads:

"It is hereby agreed between the chairman of the board of county commissioners, duly authorized by resolution, acting for and on behalf of McCurtain county, Okla., and A. J. Waldock, as trustee, judgment creditor and holder of judgments in the face amount of $16,060.95, also certain warrants in the aggregate face amount of $49,-173.33, all of which are more fully described in exhibit one attached to the resolution to fund said indebtedness; that said judgments and warrants be funded as provided by law and that funding bonds of said county be issued and when duly approved, that they be delivered said judgment creditor in full settlement of said warrants and judgments at not less than any statutory requirement.

"A. J. Waldock, Judgment Creditor.
"R. C. Oldham, Chairman Board of
County Commissioners."

Defendants contend that this is a collateral attack upon the judgment of the district court in the funding proceedings, and say that by said judgment A. J. Waldock was adjudged to be the owner and holder of the indebtedness funded.

The court in the judgment funding said indebtedness did find:

"That said county has entered into an agreement with the owners and holders of said judgments and warrants for the funding and paying the same by the issuance of the negotiable coupon bonds of said county at not less than par and accrued interest."

But nowhere in said judgment does the name of A. J. Waldock or A. J. Waldock, trustee, appear. Nowhere is A. J. Waldock or A. J. Waldock, trustee, therein adjudged to be the owner of any indebtedness so funded. However, defendants contend that before the indebtedness could be funded there must have been an agreement between the county and the owner and holder of such indebtedness, and they assert:

"The court must have found that Mr. A. J. Waldock was trustee for the owners and holders of all of said judgments and warrants or it could not have rendered the funding judgment, and, assuming that the county could be, and was, the owner of some of the indebtedness, it cannot now be heard to say that said judgment is not final, and that Mr. Waldock was not, or could not be, its trustee, because he was so decreed to be upon the application of the plaintiffs in this action in said action No. 5219."

Defendants do not question the right and authority of a county to fund the indebtedness thus held by the county treasurer for the benefit of the sinking fund, and as to the validity of the funding proceedings, as to that particular part of the so-called indebtedness of the county, we express no opinion. It is not essential in all cases for a county to have an agreement with the owners of indebtedness against the county sought to be funded, to issue funding bonds, and when issued to deliver same to the

owners and holders of such indebtedness. Under section 4268, C. O. S. 1921, the indebtedness therein mentioned may be funded and bonds may be issued and sold at not less than par and the indebtedness paid from the proceeds. It is only under section, 4272, C. O. S. 1921, where indebtedness of the county is to be refunded and new bonds issued to the holders of the indebtedness sought to be funded, that such agreement is necessary. But whether or not it be necessary to have an agreement, it is not necessary to find and determine by a judgment of the court who the owners and holders of such indebtedness are. The judgment referred to does not attempt to determine that question.

In the case of In re Assessment of First Nat. Bank of Chickasha, 93 Okla. 233, 220 P. 909, it was held:

"A judgment is conclusive by way of estoppel only as to those facts which were necessarily within the issues, and without proof of which the judgment could not have been rendered."

In the trial of the instant case counsel for defendants were requested by the court to point out, if they could, authority for the county commissioners to appoint or select a trustee to act for it, or to agree with trustee to act for the county in the funding proceedings and to receive for the county, bonds in lieu of the judgment and warrant indebtedness held by the county treasurer for the benefit of the sinking fund. They did not point out such authority, and do not here, and we have found none.

The judgment allowing the funding of the indebtedness did provide:

"And the court now in open court sign said bonds his act being attested as aforesaid under the seal of said court, and does now deliver the same, so signed, to the clerk of said court, to be by him delivered to the treasurer of said county, after the time for taking an appeal has expired, if no appeal be taken, the said treasurer to have said bonds indorsed, registered, and approved as required by law, and to deliver the same to the owners and holders of the warrants and judgments funded thereby upon cancellation of said warrants and judgments which is now surrendered to him for that purpose."

An examination of the entire record will not disclose anything that would justify defendant James in relying upon the trusteeship of A. J. Waldock. He must have known that Waldock was not the owner of the judgments and warrants held by him as county treasurer. He knew that they were included in the indebtedness sought to be funded, for he signed the application which had attached thereto a schedule of the judgments and warrants sought to be funded, including the ones held by him as county treasurer. He, therefore, knew that if the bonds when issued were to be delivered to the owners and holders of the indebtedness funded, bonds to the amount of indebtedness held by him for the benefit of the county sinking fund should have been kept and held by himself as county treasurer in lieu of the judgment and warrant indebtedness for which they were issued.

Section 4270, supra, provides:

"On the day named in the notice referred to in the preceding section, the officers authorized to issue bonds under this article shall go before the court named in said notice and make proof, to the satisfaction of the court, of the existence, character, and amount of the outstanding legal indebtedness of said municipality. On such proof being made, the court shall cause to be made upon the records of the court a statement and finding to that effect, and shall then, in open court, proceed to sign each bond to be issued, up to the amount of said indebtedness so proven and approved, and shall, after expiration of the time for taking appeals, if no appeal be taken, deliver the same to the treasurer of said municipality issuing the same, who shall be chargeable therefor, and shall be liable on his official bond for said bonds. * * *"

Under this section the county treasurer is made liable on his official bond for the bonds after they have been delivered to him as provided therein, whether they are to be sold or delivered to the holders of the indebtedness funded. If they are sold, it is his duty to collect the money therefor and pay the same to the holders of the indebtedness funded upon the surrender up for cancellation of the evidence of such indebtedness. If they are to be delivered to the holders of such indebtedness, they are not to be so delivered except upon the delivery up by such holders of the evidence of indebtedness for cancellation, whether it be judgment, warrant, or bond.

In this case, defendant James, as applied to the indebtedness held for the benefit of the sinking fund, must have known that Waldock did not have the evidence of such indebtedness to surrender or deliver up, for he himself had and held the same in his possession as county treasurer. Therefore, he must have known that he was to that extent ordering the bonds delivered to Waldock when Waldock was not entitled there-

to and had nothing to surrender or deliver up for cancellation.

The plaintiffs were not estopped by reason of the acts and conduct of the county commissioners in making the so-called agreement with Waldock, nor by the fact that he may have been treated and regarded as trustee for the county by the county commissioners or by the court. The rights involved were rights of the public. The general rule with reference to estoppel in such cases is stated in 10 R. C. L. 707, as follows:

"No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of, or because of a wrong committed by, one of its officers or agents which had been relied upon by a third party to his detriment. So a municipality is not estopped by the unauthorized acts of its officers or agent, or by his wrongful act."

See, also, Foote v. Town of Watonga, 37 Okla. 43, 130 P. 597.

Defendants further contend that if any cause of action ever existed in favor of plaintiffs, it was barred by the statute of limitations.

The funding bonds were delivered to A. J. Waldock upon the order of defendant James about November 1, 1924. This action was commenced April 30, 1927, more than two and less than three years after the alleged accrual of a cause of action.

Defendants contend that subdivision 3, section 185, C. O. S. 1921, governs us to the time within which the action could have been commenced and that the two years had expired. They assert that that part of the subdivision which reads: "An action for injury to the rights of another not arising on contract," applies to the case and that the rules announced in Morrissey v. Carter, 103 Okla. 36, 229 P. 510, and National Bk. v. Jeffries, 126 Okla. 283, 259 P. 260, govern this case.

The two cases cited, while they were suits upon the official bonds of county officers, are not applicable.

The question here presented has been decided adversely to the contention of defendants in Arnold v. Board of Com'rs of Creek County, 124 Okla. 42, 254 P. 31, wherein it was held:

"Section 185, C. O. S. 1921, providing that an action upon an official bond can only be brought within five years after the cause of action shall have accrued, is the applicable statute of limitations in an action by a county on the official bond of the court clerk required and given pursuant to section 864, Id., before entering upon the duties of his office. Where neither the petition nor the evidence discloses that the cause of action did not accrue more than five years prior to the filing of the petition, it is not error to overrule the plea of the statute of limitations."

Subdivision 5 of section 185, supra, is applicable in cases of this character, and the limitation therein provided is five years from the time the cause of action accrued.

The judgment of the trial court is hereby affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.