FIDELITY AND CASUALTY COMPANY OF
NEW YORK, Plaintiff in Error,

v.

BOARD OF COUNTY COMMISSIONERS
OF TULSA COUNTY, Oklahoma,
Defendant in Error.

No. 38341.

Supreme Court of Oklahoma.

July 14, 1959.

David H. Sanders, Bert McElroy, Tulsa, for plaintiff in error.

Robert D. Simms, County Atty., Donald D. Cameron, Asst. County Atty., Tulsa, for defendant in error.

IRWIN, Justice.

On December 28, 1956, the Board of County Commissioners of Tulsa County, Oklahoma, instituted an action against the Fidelity and Casualty Company of New York, a corporation, on three separate bonds or obligations issued by the defendant. The bonds were entitled "Public Employees Faithful Performance Blanket Position Bond", wherein the defendant (insurer and obligor) agreed to indemnify the State of Oklahoma, (obligee) for the use and benefit of the Court Clerk of Tulsa County, Oklahoma, (insured) against any loss or losses resulting from the failure of any of the Court Clerk's employees, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment during the term. of the bond. The amount of the indemnity in each bond was $5,000.

W. W. Jamar was the duly appointed, qualified and acting Chief Deputy Court Clerk of Tulsa County between January 2, 1951, and June 30, 1955, and it was his misappropriation of funds during this period that precipitated this action. It was alleged in the first cause of action Jamar received the proceeds of unauthorized vouchers in the aggregate amount of $26,-333.85, which vouchers were paid from funds belonging to plaintiff, between January 2, 1951 and January 5, 1953, the term covered by one of the bonds above referred to; in the second cause of action it was alleged that under similar circumstances the said Jamar misappropriated $34,388.60, between January 5, 1953, and January 3, 1955, which was covered by another bond; in the third cause of action it was alleged Jamar had misappropriated $5,915.35, between January 3, 1955, and June 30, 1955, which was covered by the other bond. Plaintiff prayed for judgment in the total amount of $15,000, with interest. After Motion to Dismiss, General Demurrer, Special Demurrer, Motion to make more definite and certain, Motion to Strike, Motion to separately state and number causes of action and Motion to elect were heard and overruled, to which rulings of the Court the defendant duly excepted, the defendant filed its answer alleging that Jamar, not as a public official but in his private and individual capacity as a forger, did obtain funds by false and fraudulent endorsement of the vouchers; that each bond so issued, terminated the previous bond and there is no cumulative liability and there is no liability prior to December 28, 1953, for the reason each bond provides a limitation of three years in which to file an action, and if there is liability, such liability is limited to the sum of $2,500 under each bond. That all claims asserted against the defendant have been asserted against the Citizens State Bank and the National Bank of Tulsa in actions pending against said banks. In an amendment to its answer, the two or three year statute of limitation was plead.

At the trial it was stipulated that pages 153 to 173 of the audit prepared by the State Examiner and Inspector could be introduced; that all vouchers or warrants might be admitted in evidence, and, that during the times alleged in the petition, the three bonds in the sum of $5,000 each were in effect and Samuel W. Fry was the Court Clerk, and Jamar his Chief deputy.

A deputy State Examiner and Inspector testified concerning the method employed by Jamar in withdrawing the funds from the Court Clerk's depository with the County Treasurer and his scheme of converting the proceeds to his own use and benefit. He also testified as to the vouchers and checks which were fraudulently prepared and the repayments made by Jamar. Although the audit prepared by the State Examiner and Inspector is not in the record, it is evident that certain fraudulent withdrawals had been made and credit given for repayments.

The amount and date of the fraudulent withdrawals are not controversial; however, there is a controversy with reference to the application or credit for repayments as to whether plaintiff had the right to apply the repayments to the oldest shortages and if credit should be given for $4,-035 paid by Jamar after his dismissal and the cancellation of the third bond, for the misappropriations for the period beginning January 3, 1955. The repayments made prior to January 3, 1955, were applied by Jamar himself to certain cases selected by him and the trial court was correct in the application of the credits for these repayments. Wheeler v. American Inv. Co., 167 Okl. 558, 31 P.2d 117; Bright v. State, 76 Okl.Cr. 67, 134 P.2d 150.

In connection with the $4,035 payment, the following occurred during the trial:

"Mr. Sanders: Well, as to the manner it was handled but at this time can it be stipulated that $4,035.00 was paid back by Jamar in 1956—that's a true fact.

"The Court: That much can be stipulated, but you shall have the right to develop when, under what circumstances, and what application was made of it."

Both sides rested without any further proof being offered. The plaintiff took the position it was the duty of the defendant to prove that said fund was not properly credited and the defendant contended the $4,035 should be applied to misappropria-

tions in 1955. The Court thereupon informed defendant it was his duty to show that it was not properly applied and unless such proof was offered he would strike from the record all reference to the payment. The Court offered to reopen the case for this purpose but the defendant offered no proof, except to say the deposition of Jamar showed how the money was credited. All reference to the payment was stricken leaving no evidence whatsoever on this point and as the deposition of Jamar and the other exhibits referred to are not in the record, we therefore cannot say the trial judge was in error in disallowing the credit.

The Court took the matter under advisement and made special findings of fact and conclusions of law, to-wit: That the bonds were common law bonds; that the five year statute of limitation was applicable from the time of each loss or shortage and that the three year limitation for bringing an action provided for in the bonds was invalid; that under the first bond plaintiff could recover for only that period of time between December 28, 1951, (the five year limitation being applicable) and January 5, 1953, during such time Jamar had converted to his own use and benefit $18,350.55, but repaid $13,680 for a net loss to the fund of $4,670.55; under the second bond the amount misappropriated was $33,-351.20, with repayment of $22,332.10, making a net loss of $10,819.10 for that period; that during the third period Jamar misappropriated $5,915.35, with repayment of $50, making a net loss to the fund of $5,-865.36, and rendered judgment on the first cause of action against the defendant for $4,670.55, and on the remaining two causes of action in the sum of $5,000 each, making a total judgment of $14,670.55, with interest from date suit was filed, and costs.

The defendant has appealed from the judgment of the trial court contending that, (1) either the two year statute of limitation provided by Title 12 O.S.1951 § 95, sub. Sec. 3, or the three year limitation contained in each bond was applicable and not the five year limitation, (2) credit

should have been given for the repayment of $4,033.85, by Jamar in 1956, (3) its maximum liability on each bond was $2,500 as provided by Title 19 O.S.1951 § 149.

The plaintiff appealed (docketed as cause #38,292, in this Court), on the ground that it was entitled to recover the full $15,000, and contends that (1) the cause of action did not accrue until the loss was discovered or might have been discovered with the exercise of reasonable diligence, as the employee fraudulently concealed his acts of embezzlement and it was not immediately discovered, and plaintiff had two years after the discovery of the fraud to institute the action; or the cause of action did not accrue until the end of the term of each bond and not upon the occurrence of the loss or shortage, and the five year limitation would be applicable; and (2) the plaintiff had the right to apply the repayments to the oldest shortages.

Although this involves two separate appeals, there is only one judgment for review before this Court and all the issues will be determined in this case. The parties will be referred to as they appeared in the trial Court.

■ First, we must determine the type of bonds upon which the action is predicated. The bonds named the State of Oklahoma as the obligee for the use and benefit of the Court Clerk, named as the insured, thereby insuring him against the defalcation of his employees. The defendant contends the bonds were statutory, pursuant to Title 19 O.S.1951 § 149, which provides a court clerk may require a bond from his deputy in a penal sum not greater than one-half of his own bond, which may be retained for his own benefit. To sustain this position, the Court Clerk would have required a bond from Jamar under Sec. 149, supra, and Jamar would have made application, and would have been the contracting party on the bond and, consequently, personally liable thereon. Jamar is not a contracting party upon the bonds under consideration and would not be personally liable thereon or a proper party defendant

in this action. We conclude that the bonds were not issued under the provision of Sec. 149, supra, but were issued for the protection of the funds handled by the employees in the office of the Court Clerk, for which the Court Clerk is responsible, and the amount of indemnity under each bond in this case was $5,000.

■ Plaintiff and defendant both propose that the two year limitation for bringing the action is applicable but have conflicting views as when the action would accrue. Plaintiff contends the action could be brought within two years from the date the fraud was discovered while the defendant contends it was two years from the date the fraudulent acts were committed. Defendant relies upon Morrissey v. Carter, 103 Okl. 36, 229 P. 510, Garland v. Zebold, 98 Okl. 6, 223 P. 682, Freeman v. Wilson, 105 Okl. 87, 231 P. 869, and Harris v. Roberts, 179 Okl. 568, 66 P.2d 931. These actions were instituted against officials and individuals and their bondsmen for malfeasance in office, dereliction or neglect of duties and responsibilities. In such cases the time in which to file the actions were governed by the cause of action and the particular bond. In the instant case, there was a written contract whereby the defendant as surety agreed to indemnify the State of Oklahoma for the use and benefit of Court Clerk for the failure of the employees to faithfully perform their duties. This is an action on a contract (surety bond), and the trial court was correct in limiting the liability for the misappropriations made prior to December 28, 1951, which is five years prior to the date this action was instituted. State for Use of Board of Commissioners of Osage County v. McCurdy, 115 Okl. 111, 241 P. 816; National Surety Co. v. State ex rel. Richards, 111 Okl. 185, 239 P. 262; Frear v. State ex rel. Caldwell, 76 Okl. 213, 184 P. 771; Arnold v. Board of Commissioners of Creek County, 124 Okl. 42, 254 P. 31; Abernathy v. State of Oklahoma, 10 Cir., 31 F.2d 547; State ex rel. Dabney, for Use and Benefit of Stone v. Westbrook,

149 Okl. 131, 299 P. 848; and James v. State ex rel. Finney, 160 Okl. 99, 15 P.2d 591.

 Neither can we sustain plaintiff's position that it had two years from the time the fraudulent acts were discovered to institute the action as each misappropriation, embezzlement or fraudulent act could be the subject of an action. Each misappropriation was represented by a check or voucher prepared and signed by Jamar, and the name of the payee endorsed by Jamar after the check or voucher had been registered by the Treasurer. In many instances where money was misappropriated, each check or voucher was posted on the appearance docket under the case number from which the fraudulent withdrawal was made, and when it became necessary for Jamar to replace the money, so the person entitled thereto could collect the same, a new deposit was made in the same case by misappropriating money from another case. The new deposit would be also entered on the appearance docket, making two records that would indicate something was wrong. The records of the Court Clerk, which include the appearance dockets are public records and the checks or vouchers as drawn, registered and cashed, are also public records. An examination of these records would have revealed that when a check or voucher was drawn in a particular case, it was drawn in the surname of the person entitled thereto, but a difference was made in the initials or given name. When a redeposit was necessary and a new check or voucher was written, it was written in favor of the proper person. This method had been used by Jamar for several years and all that was necessary to determine the fraudulent transactions was for the Court Clerk or someone else to check the records. In the case of Board of Commissioners of Garfield County v. Renshaw, 23 Okl. 56, 99 P. 638, 22 L.R.A.,N.S., 207, we held:

"The phrase 'until discovery of the fraud,' in the third paragraph of section 4216, Wilson's Rev. & Ann.St. 1903, does not necessarily mean until

the party complaining had actual notice of the fraud alleged to have been committed, for constructive notice of fraud is sufficient to set the statute in motion, even though there may be no actual notice. Where the means of discovery lie in public records, required by law to be kept, which involve the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud to set the statute in motion."

In Eaves v. Busby, Okl., 268 P.2d 904, we held:

"* * * The public records themselves are sufficient constructive notice of the fraud to set the statute of limitation in motion."

And in Purcell Bank & Trust Company of Purcell v. Byars, 66 Okl. 70, 167 P. 216, 218, we said:

"We think, however, that the consensus of opinion of the courts of last resort is that the cause of action accrues and the statutes of limitation begin to run upon the conversion of the funds by the clerk or officer. * * *"

Defendant further contends that if the two year statute of limitation is not applicable, the three year limitation contained in each bond applies. This position is untenable as each bond provided that "if such limitation for bringing suit, action or proceeding is prohibited or made void by any law controlling the construction of this bond, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law," and furthermore, Title 15 O.S.1951 § 216 provides as follows:

"Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

**552**

We therefore hold that the limitation of three years provided for in each bond limits the time within which plaintiff could enforce its rights and is therefore void.

For the foregoing reasons, the judgment is affirmed.

WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD and BERRY, JJ., concur.