Raymond Howard COX and Bette Cox, husband and wife, Appellees,

v.

William H. WILSON et al., Appellants.

No. 46597.

Supreme Court of Oklahoma.

Nov. 12, 1974.

Fred W. Whetsel, W. S. Horton, McAlester, for appellees.

Preslie H. Brown, McAlester, for appellants.

WILLIAMS, Vice Chief Justice.

This is an appeal by some of the defendants from judgment for plaintiffs in an action to quiet title to certain real estate consisting of 12 vacant lots located in Quinton, Pittsburg County, Oklahoma. Plaintiffs, Mr. and Mrs. Cox, claim the property as remote grantees of Herman Wilson. The appealing defendants are the children (and the wives of two of them) of Herman Wilson and Wilda Wilson, both now deceased, and claim as grantees in a deed conveying a one-half interest in the property executed by their mother shortly before her death. Our further discussion of the pleadings and evidence in this case will be limited to those factors affecting the rights of these parties.

Plaintiffs pleaded that at a time when he owned the property and title stood in his name alone, Herman Wilson executed a warranty deed conveying to his father, O. L. Wilson, dated June 3, 1970 and recorded October 7, 1970; that O. L. Wilson, joined by his wife, conveyed the property to E. L. Etchison and his wife, who in turn conveyed it to plaintiffs by warranty deed executed and recorded in 1972. They asked that the deed from Wilda Wilson to her children, the appealing defendants, conveying a one-half interest in the property, executed on September 17, 1970 and recorded the next day, be cancelled as a cloud on their title.

In an amended answer and cross-petition, the defendant children pleaded that their father, after having executed the deed to their grandfather, O. L. Wilson, began a divorce action against their mother in Haskell County, where the parties resided, on July 13, 1970; that their mother filed a cross-petition for divorce in which she described, and claimed an interest in, the property of the parties, including the real estate here concerned; that she obtained a temporary order in which their father was restrained from disposing of any of the property of the parties; and that she died on September 24, 1970, before the divorce action was tried. It is agreed that she claimed no homestead interest in the subject property. They alleged in effect that the conveyance from their father to their grandfather was executed in fraud of the marital rights of their mother and that, since it was not recorded until after the execution and recording of their deed from their mother, their claims were superior to those of plaintiffs.

We agree that the circumstance, standing alone, that the father conveyed the property concerned to the grandfather shortly before instituting the divorce action, raises grave questions as to his motives.

However, the rather tragic details surrounding the events summarized above were disclosed in substantially uncontradicted evidence. The mother was informed in 1962 that she was afflicted with terminal cancer and had only six months to live, but the ailment did not develop as rapidly as the physicians had expected. The grandfather, O. L. Wilson, testified that during the ensuing years, Herman Wilson borrowed a considerable amount of money, mostly from Mr. Etchison, and that he (the grandfather) had cosigned the notes. He said "Herman wasn't running through a lot of stuff, he had a wife that had cancer for seven years, and he spent most all of the money he could get having to take care of her". He testified that he borrowed lots of money for his son, that he paid off one note for him at the bank in Eufaula, and that he helped Herman Wilson "Like you would help a son". When asked why Herman Wilson gave him the deed to the property here concerned, he testified:

"To pay those bills that he owed, the Etchison notes, he knew that I would have to pay them, because he was broke and didn't have the money. He knew I would have to pay them, and he said, 'Dad, take that and sell it, and pay him, let him have it, do whatever you want to', he wasn't trying to beat anybody."

The mother and father were separated before the divorce action was filed. One

of the defendant children testified that "We tried to stay out of it as much as we could, but Mamma at that time was sick with cancer and somebody had to carry her to the lawyers and to court, and pretty well tend for her". He also testified that "* * * at this time, of course, you can understand, there—ah—were feelings, there was a divorce suit pending between my Dad and my Mother, there was kind of . . . everybody was on the spot, you know".

The testimony of the grandfather as to the circumstances surrounding the conveyances from Herman Wilson to O. L. Wilson, and from O. L. Wilson and his wife to E. L. Etchison and his wife, is fully supported by the testimony of Etchison. At the time the conveyance to Etchison was made, a rather inexpertly-drawn contract of sale, drafted by a scrivener not trained in the law, was also executed. It recites that the consideration for the conveyance to Etchison was the satisfaction of "all indebtedness and or obligations of any notes, mortgages and/or monies" owed by Herman Wilson and O. L. Wilson to Etchison. Three notes to Etchison executed by the Wilsons in 1962, 1965 and 1967, are listed in the contract and the "Method of Figuring Consideration" is set out in detail. It was $12,249.00, which was the amount of the unpaid principal and interest on the notes.

In a memorandum opinion, the trial court held, in effect, that since the conveyance from Herman Wilson to O. L. Wilson was executed and delivered before the divorce case was filed, it was sufficient, in the absence of fraud, to pass title to O. L. Wilson, plaintiffs' predecessor in title, even though it was not recorded until after the recording of the deed from Wilda Wilson to the children. He further held that no fraud was shown and quieted title in plaintiffs.

In this Court, the defendant children argue generally under three propositions that by reason of the divorce case, the rights of Wilda Wilson in the jointly acquired property had become vested; that the trial court's judgment is not supported by any competent evidence; and that plaintiffs could not claim the status of innocent purchasers. In all of the arguments in their briefs, defendants ignore the fact that the conveyance from Herman Wilson to O. L. Wilson was made before the divorce case was filed, and that, even though plaintiffs purchased the property after the deed from Wilda Wilson to the children was recorded, they are entitled to stand in the shoes of O. L. Wilson, their predecessor in title.

Defendants rely principally upon Sanditen v. Sanditen, Okl., 496 P.2d 365. In that case a wife had brought an action in fraud to set aside certain gratuitous transfers by her husband of property acquired during coverture. Defendants were the donees of the property. The trial court sustained a demurrer to the petition, and the question presented on appeal was whether the petition stated a cause of action. This Court noted the wife's allegation that the gifts of jointly acquired property were made without consideration with intent to defraud plaintiff of her marital rights and said that "* * * the only meaning that can be attributed to her allegation is that her husband fraudulently gave the property away so she would not inherit it at his death as provided in 84 O. S.1961, § 213". This Court then held in effect that a cause of action was stated, reversed the judgment and remanded the cause for trial.

Of course the question presented on appeal in the case now before us is not merely the sufficiency of the pleadings, but whether the evidence actually presented properly supports the trial court's judgment. In *Sanditen*, in discussing the property rights of the husband, this Court said at page 368 of the Pacific Reporter:

"* * * By statute he has the right to use * * * property acquired during coverture to fulfill his marital obligations and to conduct the affairs of his business in a manner which he deems

proper and necessary. * * * It is only when the gift has sinister elements of fraud of the marital rights that the law protects the wife. * * *"

■ We find no gift and no "sinister elements of fraud" in this case. By the uncontradicted evidence, the conveyances from Herman Wilson to O. L. Wilson and his wife, and from them to the Etchisons, were given for a valuable consideration—the satisfaction of the pre-existing indebtedness of Herman Wilson to Etchison (for which O. L. Wilson was also liable as a cosigner on the notes). It thus cannot be said in this case that the husband "fraudulently gave the property away" so his wife would not inherit it; on the contrary, he conveyed it for a valuable consideration, and his motives—the payment of pre-existing indebtedness largely incurred in the case of the unfortunate wife—were proper in every respect.

■ It may be conceded that plaintiffs, Mr. and Mrs. Cox, having acquired their interest in 1972 from the Etchisons, had constructive notice of the conveyance from Wilda Wilson to her children, recorded in 1970. At least to that extent, plaintiffs cannot be said to be innocent purchasers. In that situation, as between the two opposing sets of claimants, we think the trial court properly held in favor of plaintiffs, who claimed as remote grantees under the deed from Herman Wilson to O. L. Wilson, executed for a valuable consideration in a transaction untainted with fraud, by a grantor who held record title in his own name. Defendant children, on the other hand, claimed under a subsequent conveyance from one (Wilda Wilson) who was a stranger to the record title and who at that time actually had no interest to convey.

■ There is considerable argument in the briefs as to whether O. L. Wilson, the Etchisons and the plaintiffs had actual knowledge of the divorce proceedings. Under the uncontradicted facts in this case, that question is immaterial. The conveyance to O. L. Wilson was made before the filing of the divorce case; since it was supported by a valuable consideration and no fraud was involved, his rights vested at that time and they were not divested by the claims subsequently asserted by the wife in the divorce case. Plaintiffs are entitled to stand in his shoes.

The judgment of the trial court is affirmed.

All the Justices concur.