2013 OK CIV APP 96

Delmar Byrl GARRETT,
Plaintiff/Appellant,

v.

Carlotta GORDON, Defendant/Appellee,

and

Dwayne M. Garrett; Delmar Gene Garrett; Karen Cardin Walsh, Trustee; and Joe L. White; Defendants.

No. 109957.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 12, 2013.

Certiorari Denied Oct. 7, 2013.

Thomas E. Kimble, Law Offices of Thomas E. Kimble, Arlington, Texas, and Sherri K. Anderson, Anderson Law Firm, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant.

Brian R. Huddleston, Huddleston Law Offices, Tulsa, Oklahoma, for Defendant/Appellee.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Plaintiff/Appellant Delmar Garrett[1] (Delmer) appeals the September 13, 2011, Journal Entry Order of the district court denying his Motion to Vacate Void Judgment, Vacate Partition Order, and Emergency Motion to Stay Sheriff's Sale. The judgment sought to be vacated was entered in a divorce suit in which Delmer was named as a party. Because the judgment roll in the divorce proceeding shows that the district court had personal jurisdiction over Delmer at the time the judgment was entered, he is bound by the terms of that judgment. Therefore, the district court correctly denied Delmer's motion to vacate and we affirm.

**BACKGROUND**

¶ 2 The dispute at issue in this appeal concerns the ownership of two tracts of real property located in Washington County, Oklahoma, a forty-acre tract and a tract of approximately two acres included in the forty acre tract (collectively, the Property). In a divorce proceeding between Defendant/Appellee Carlotta Gordon (Gordon) and Defendant Dwayne Garrett (Dwayne) styled, *Carlotta Colene Garrett n/k/a Carlotta Gordon v. Dwayne Marvin Garrett,* filed in Washington County, Case No. FD–94–469, (the Divorce Action) the district court determined that the Property was marital property. In its Journal Entry of Judgment, Final Decree for Dissolution of Marriage (by Default) (the 2006 Decree), entered on February 27, 2006, and filed September 6, 2006, the district court awarded Gordon one-half of her former husband's interest in the Property.

¶ 3 Dwayne appealed the property division order in the 2006 Decree in *Carlotta Colene Garrett n/k/a Carlotta Gordon v. Dwayne Marvin Garrett,* No. 103,841 (Okla.Civ.App. May 23, 2008). Although this Court affirmed the district court's decision, in consideration of Dwayne's argument that he did not own the Property, we stated:

> As·a companion to this argument, Garrett asserts that the true property owner is a necessary party to this Divorce Action. He does not cite 12 O.S.2001 § 2019, the statute requiring joinder of persons necessary for adjudication of the matter, or point to any place in the record where the district court was asked to join his father. However, even if this argument were preserved for appeal, it is unpersuasive. Garrett does not argue that the district court lacked jurisdiction over him or his property, nor could he. 43 O.S. Supp.2006 § 121. Further, the district court's Judgment and Decree is effective only as to those who are parties to the case. *Fent v. Oklahoma Natural Gas Co.,* 1994 OK 108, ¶ 15, 898 P.2d 126, 133 (issue preclusion operates to bar from relitigation both correct and erroneous rulings but it cannot be made binding on anyone unless the party against whom the earlier decision is interposed had "full and fair opportunity" to litigate

1. Although appellant is identified in the caption of this case as Delmar, it is clear from the record that Appellant's first name is spelled "Delmer."

the critical issue in the earlier case). There is no decision in this record that the Judgment and Decree purports to relitigate with respect to the ownership of this property. Nonetheless, if Garrett does not own this property, as he contends, the district court's Judgment and Decree does not affect the rights of the true property owner, who may bring an action to establish ownership. 12 O.S.2001 § 1141.

*Carlotta Colene Garrett n/k/a Carlotta Gordon v. Dwayne Marvin Garrett,* No. 103,841, *5, n. 1 (Okla.Civ.App. May 23, 2008).[2]

¶4 On October 23, 2009, Delmer filed a Petition in the district court of Washington County, Case No. CS–2009–925 in which he sought to quiet title to the Property. Gordon and Dwayne, among others, were named as defendants. Delmer alleged that he was the owner of the Property, that his title was derived from deeds conveying the Property to his wife, Ruth Garrett and his son, Dwayne Garrett in 1993, that he and Ruth maintained the Property as their homestead continuously for a period in excess of fifteen years, and that they paid the property taxes on the Property from 1994 through 2010. Delmer alleged Ruth's interest in the Property was passed to her heirs at law upon her death, and identified such heirs as himself, and their sons Dwayne and Delmar Gene Garrett. Attached to the Petition was an Affidavit by Dwayne disclaiming any interest in the Property.

¶5 Gordon filed an answer and counterclaim to Delmer's petition arguing his claims were barred by the doctrines of *res judicata* and collateral estoppel. Gordon argued the court in the divorce proceeding determined that the Property was marital property subject to equitable division and awarded one-half of the Property to her and the other half to Dwayne. Gordon further argued this ruling was affirmed on appeal. Based upon such rulings, Gordon claimed she and Delmer were tenants in common, each owning an undivided one-half interest in the Property. For her counterclaim, Gordon sought partition of the Property.

¶6 The district court took judicial notice of the Washington County divorce proceeding wherein Gordon was awarded an undivided one-half interest in the Property and the subsequent appeal. The district court found that Gordon was a tenant-in-common with Delmer. The district court ordered the Property partitioned in an order filed January 5, 2011. Delmer, now acting *pro se* having "relieved [his former counsel] of his duties," objected to the partition alleging a violation of his right to due process.[3] Gordon subsequently filed a motion for order for sheriff's sale, to which Delmer filed a timely objection. Delmer continued to assert sole ownership of the Property and to object to the proceedings claiming that he was never served with process in the Divorce Action. On June 1, 2011, the district court ordered the Property sold at sheriff's sale.

¶7 Delmer retained new counsel and filed a combined motion to vacate the 2006 Decree, to vacate the partition order and an emergency request to stay the sheriff's sale. Delmer's motion to vacate argued that the 2006 Decree entered in Washington County Case No. FD–94–469 was void as against him

---

2. The record on appeal in that case consisted of six items:
   1. 2/6/06—Order Setting Pretrial Hearing (2/27/06 @1:00 pm) (Osage County Courthouse Rm 203 Pawhuska Oklahoma before D David Gambill)
   2. 2/10/06—Motion to Vacate Notice of Non-Appearance—Brief in Support
   3. 2/16/06—Affidavit/Return of Service for Dewayne [sic] Marvin Garrett by Certified Mailing
   4. 2/17/06—Notice and Warning
   5. 9/6/06—Journal Entry of Judgment Final Decree For Dissolution of Marriage (By Default)
   6. 10/19/06—Designation of Record for Appeal from District Court.

3. Delmer also filed a complaint in the United States District Court for the Northern District of Oklahoma alleging a cause of action against Gordon, Washington County, Washington County Court Clerk, and the three Commissioners appointed to partition the Property, pursuant to 42 U.S.C. § 1983 based upon a deprivation of due process. The record contains an Opinion and Order in one of four federal cases noting the court had repeatedly advised Delmer that it lacked jurisdiction to consider such claims and advising him that any subsequent filings would be considered frivolous and for the purpose of harassing the defendants and subject to an appropriate sanction.

for lack of service of process. Additionally, Delmer argued the Decree should be invalidated as to his interest in the Property, because he was never given notice of any pre-trial conferences nor warned of the consequences of his failure to attend the same. Based on his contention that the 2006 Decree was void as to any purported disposition of his interest in the property, Delmer argued that the district court erred in ordering partition of the Property.

¶ 8 The district court heard oral argument on Delmer's motion but denied the motion in its entirety. It is from the district court's Journal Entry Order filed September 13, 2011, denying Delmer's motion to vacate the 2006 Decree, the order of partition and his request for an emergency stay of the sheriff's sale that Delmer filed the present appeal.[4] Our disposition of the two motions to vacate renders consideration of any error in the district court's ruling on Delmer's request for a stay of the sheriff's sale unnecessary.

## STANDARD OF REVIEW

¶ 9 Although within the time to do so, Delmer did not file a petition to vacate the 2006 Decree in that action pursuant to 12 O.S.2001 § 1033. Nonetheless, a void judgment may be challenged by motion in a separate proceeding. *Norman v. Trison Dev. Corp.*, 1992 OK 67, ¶ 10, 832 P.2d 6, 10. Delmer's motion to vacate the 2006 Decree in this quiet title action is, therefore, a collateral attack on that judgment. *Booth v. McKnight*, 2003 OK 49, 70 P.3d 855. As such, appellate review is limited to the judgment roll. *Farmers' Union Co-Op. Royalty Co. v. Woodward*, 1973 OK 128, ¶ 11, 515 P.2d 1381, 1384. The judgment roll "is generally synonymous with 'common-law record.'" *Booth*, 2003 OK 49, ¶ 11, n. 21, 70 P.3d 855, 859. "The record shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts,

orders, judgments, and all material acts and proceedings of the court." 12 O.S.2011 § 32.1.

¶ 10 If review of the judgment roll in the Divorce Action shows that the district court had personal jurisdiction over Delmer, the 2006 Decree is facially valid and will be enforced. *Booth*, 2003 OK 49, ¶ 10, 70 P.3d at 859 (facially valid decrees of a district court are immune from collateral attack even if wrong). The district court's determination regarding personal jurisdiction is a legal conclusion reviewed *de novo*. *Id.* ¶ 12, 70 P.3d at 860. The standard of review applicable to the district court's order denying Delmer's motion to vacate the order of partition is discussed in the following section.

## JURISDICTION

¶ 11 Although styled as a motion to vacate the order of partition, that order was entered pursuant to 12 O.S.2001 § 1505: "After the interests of all the parties shall have been ascertained, the court shall make an order specifying the interests of the respective parties, and directing partition to be made accordingly." It is not, however, a judgment of partition. "If partition be made by the commissioners, and no exceptions are filed to their report, the court shall render judgment that such partition be and remain firm and effectual forever." 12 O.S.2001 § 1511. Orders of partition are not ordinarily final, appealable orders and are subject to revision until a judgment of partition is entered.

> An order for partition entered as prescribed by Tit. 12 O.S.1951 § 1505, making no change in nor final determination of a substantial right of any of the parties to the proceedings is not a final order or judgment within the meaning of our appellate jurisdiction statutes, Tit. 12 O.S.1951 §§ 952, 953, or judgment vacation statutes, and can be modified, vacated or set aside previous to the trial court's consideration

---

4. Gordon filed a Waiver of Right to File Brief in accordance with Okla.Sup.Ct.R. 1.10(5), 12 O.S.Supp.2001, ch. 15, app. 1. "Reversal is never automatic on a party's failure to file an answer brief. When the record presented fails to support the error alleged in the brief of the party

who lost below, the decision to be reviewed cannot be disturbed. It is presumed correct until the contrary is shown by the record." *Enochs v. Martin Properties, Inc.*, 1997 OK 132, ¶ 6, 954 P.2d 124, 127.

of the commissioners' report and its final judgment, even after the term of court during which it was entered. *Clement v. Ferguson*, 1955 OK 95, ¶ 0, 287 P.2d 207 (syllabus 2). However, the Court in *Clement* left open the possibility that an order of partition, although interlocutory, may "be regarded as a final or appealable order" depending on the circumstances. *Id.* ¶ 7, 287 P.2d at 211. The cited language in *Clement* "relates to an order 'making no change in nor final determination of a substantial right of any of the parties.'" *Frost v. Blockwood*, 1965 OK 178, ¶ 11, 408 P.2d 300, 303.

■ ¶ 12 In this case, Delmer claims ownership of the entire Property. In that context, an order of partition and subsequent sheriff's sale affects his right to occupancy of the Property. This Court has appellate jurisdiction over an "order that ... refuses to vacate or modify a provisional remedy which affects the substantial rights of a party." 12 O.S.2001 § 952(b)(2). Because Delmer's right to occupancy of the Property, if he is the sole owner, is substantial and would obviously be affected by the order of partition, we have jurisdiction to review the district court's order denying his motion to vacate the order of partition.

■ ¶ 13 The district court's denial of Delmer's motion to vacate the order of partition is reviewed pursuant to the standard applicable in equitable matters. "While the remedy of partition is statutory, the court enforcing it has substantially the same powers as were exercised by courts of chancery under the former equity practice." *Hargis v. Hargis*, 1937 OK 660, ¶ 8, 73 P.2d 1129, 1130. "Although the right to partition is absolute, partition proceedings are one of equitable cognizance and equitable principles apply." *Chesmore v. Chesmore*, 1971 OK 49, ¶ 6, 484 P.2d 516, 518 (citation omitted). "In an equitable matter, the Court will examine the whole record and weigh the evidence, but the trial court's findings will not be disturbed in that review unless they are clearly against the weight of the evidence or some governing principle of law." *In Re Lorice T. Wallace Revocable Trust*, 2009 OK 34, ¶ 2, 219 P.3d 536, 537 (citing *Estate of Sneed*, 1998 OK 8, ¶ 8, 953 P.2d 1111, 1115). "The decree and orders of a district court in partition actions will not be disturbed on appeal in the absence of a showing of substantial prejudice." *Mauch v. Mauch*, 1966 OK 145, ¶ 0, 418 P.2d 941 (syllabus 2).

## ANALYSIS

¶ 14 Delmer's only challenge to the order of partition is based on his contention that the award of one-half of the Property in the 2006 Decree is not binding on him. Therefore, the efficacy of the district court's order of partition depends on the correctness of its denial of the motion to vacate the property division portion of the 2006 Decree. Based on the narrow scope of review permitted by Delmer's collateral attack on the 2006 Decree, that issue is determined by review of the judgment roll in the Divorce Action. In this case, that review is facilitated by an examination of the relevant history of the Property.

### I. Ownership of the Property and the Divorce Litigation

¶ 15 On December 29, 1993, Margaret Ullrich Snow transferred the Property via warranty deeds to Ruth Garrett and Dwayne Garrett as joint tenants with the right of survivorship. This transfer occurred approximately three years after Gordon and Dwayne were married. Gordon filed for divorce in November 1994. In May 1996, the court granted dissolution of the marriage, but reserved ruling on the property division issue. On July 24 and 25, 1997, immediately following a hearing in the Divorce Action in which Gordon was awarded attorney fees against Dwayne as a sanction for discovery misconduct, Dwayne purported to transfer his interest in the Property to Ruth. The July 24, 1997 deed from Dwayne to Ruth conveyed the two acre tract; the July 25, 1997 deed added the forty acre tract.

¶ 16 Gordon filed a motion in September 1997, seeking to join Ruth as a defendant in the Divorce Action, to set aside Dwayne's July conveyances to Ruth as fraudulent transfers, and to determine the "just adjudication of the claim" to the Property which had been reserved when the parties were

granted a divorce in 1996. The motion also sought leave to serve Ruth by publication alleging that she had been previously served with a subpoena but failed to appear and would take action to avoid service.

¶ 17 In an order dated January 12, 1998, the district court granted Gordon leave to join Ruth as a defendant, approved service on Ruth by publication and enjoined Dwayne and Ruth from selling or encumbering the Property. In response to that order, counsel for Ruth filed an entry of appearance in the Divorce Action in February 1998. He also filed a motion to quash service of Gordon's amended petition by publication. A copy of that motion was mailed to Gordon's counsel and "hand delivered to Dwayne Garrett, address unknown." Gordon filed her amended petition on April 28, 1998, adding Ruth as a defendant and the fraudulent transfer claim. Gordon served the amended petition on Ruth by mailing a copy to Ruth's counsel. Ruth filed her answer and counterclaim to Gordon's amended petition on May 4, 1998. Ruth's answer denied the Property had been fraudulently transferred by Dwayne; her counterclaim sought the return of certain personal property allegedly in Gordon's possession. The following day, Ruth purported to deed the Property to herself and Delmer as joint tenants. Ruth died six days later on May 11, 1998.

¶ 18 On August 14, 1998, Ruth's counsel filed a motion to withdraw as her counsel in the Divorce Action citing Ruth's death as the basis. The motion also stated that counsel had talked to Ruth's heirs and reported that those heirs had no objection to his withdrawal. The order granting counsel's motion to withdraw was prepared by Ruth's counsel and mailed to Dwayne in care of Delmer at Rt. 2, Box 1481, Ramona, Oklahoma 74061. Ruth's counsel also mailed that order to Delmer at the same address. On September 17, 1998, Dwayne's counsel was permitted to withdraw as well. Thereafter, Dwayne appeared in the divorce proceedings *pro se.*

¶ 19 A petition for determination of Ruth's heirs was filed in a separate action on February 19, 1999. In an order dated March 31, 1999, and prepared by Ruth's former counsel in the Divorce Action, Delmer was appointed as the special personal representative of Ruth's estate. On May 1, 2001, Gordon filed a motion to join Delmer individually and as the special representative of Ruth's estate in the Divorce Action.[5] That pleading was styled "Carlotta Gordon (formerly Garrett), *Plaintiff v. Dwayne Garrett, and Delmer B. Garrett,* individually and as Special Administrator of the Estate of Ruth V. Garrett, deceased, Defendants." Delmer filed a special appearance and objection to joinder on May 18, 2001. The district court granted Gordon's motion to substitute Delmer for Ruth in the Divorce Action at a pretrial conference attended by Dwayne and Gordon's counsel on October 3, 2003. Gordon mailed a copy of her amended petition to Delmer at his Rt. 2, Box 1481 address on May 17, 2004.[6]

5. The disposition of Gordon's claim to the Property spanned almost eleven years from 1997 to 2006. As reflected by the record, part of that delay resulted from a personal bankruptcy action filed by Dwayne in September of 1998 and Gordon's successful negotiation with the bankruptcy trustee of a settlement permitting Gordon to pursue her claim to the Property in the Divorce Action. As part of the consideration for that settlement, Gordon agreed to release a $60,000 secured claim she had filed in Dwayne's bankruptcy case. Further delay resulted from Dwayne's numerous and successful attempts to have the assigned judge withdraw and the case assigned to another judge including an unsuccessful original action in the Supreme Court. Eventually, Dwayne obtained the voluntary recusal of all four judges assigned to Washington County and a judge from Osage County was assigned to the case. In addition, on several occasions Dwayne filed motions alleging Gordon and her counsel had committed fraud and criminal acts and sought the "immediate" arrest of Gordon's counsel.

6. In his motion to vacate, Delmer also argues this pleading was defective because no suggestion of death was filed pursuant to Title 12 O.S. § 2025(A)(1): "During the pendency of an action any party or any attorney who was an attorney of record for the deceased party immediately preceding death may file with the court a statement of the death of another party...." Contrary to Delmer's argument in this case, the filing of a suggestion of death is not mandatory in order for the district court to acquire jurisdiction over the person substituted for the deceased party. *Campbell v. Campbell,* 1994 OK 84, ¶ 32, 878 P.2d 1037, 1044. Further, Delmer did not raise this issue in the Divorce Action. With the excep-

¶ 20 Delmer did not file an answer or otherwise respond to Gordon's amended petition other than the defenses raised in his special appearance. In his representative capacity he was not required to do so. An answer and counterclaim had previously been filed by Ruth. Once Delmer became a party in the Divorce Action, he was free to amend or withdraw the previously filed pleading but he was not required to do so. *See McIntire v. Torrance*, 1939 OK 226, ¶ 8, 90 P.2d 17, 18:

No amendment of any pleading nor the filing of any additional pleading is required when the pleadings already filed state the cause of action or defense for or against the party substituted. And, as a general rule, the substituted party takes up the prosecution or defense at the point where the original party left it, assuming the burdens as well as receiving the benefits.

"A substituted party steps into the same position of the original party." *Ransom v. Brennan*, 437 F.2d 513 (5th Cir.1971), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971) (construing the federal counterpart to 12 O.S.2001 § 2025). *Accord, Cartwright v. Atlas Chemical Indus., Inc.*, 1981 OK 4, 623 P.2d 606 (judgment binding on corporate defendant substituted for incorrectly named defendant after mandate); *Wagoner v. Saunier*, 1981 OK 17, 627 P.2d 428 (corporate defendant substituted for its president and sole stockholder during trial was afforded a full and fair opportunity to defend the action); *Saint Paul Fire & Marine Ins. Co. v. Spann*, 1960 OK 167, 355 P.2d 567 (pretrial substitution of corporate defendant for individual relates back to the filing of the petition). Were this not so, Delmer would have been in default for failure to file any responsive pleading and, there-fore, not entitled to the notice he claims he was entitled to receive. 12 O.S.2001 § 2005(A).

¶ 21 In the Divorce Action, Gordon claimed that the Property was marital property or, at a minimum, subject to a lien for the payment of the July 1997 attorney fee award against Dwayne. Dwayne, Ruth and Delmer denied that the Property was marital property, claimed that Ruth had purchased the Property with her own funds and, although she was married to Delmer at the time, Dwayne's name was added to the deeds from Snow as a convenience to Ruth. Ownership of the Property and Ruth's claim to the Property was, therefore, at issue when the district court rendered the 2006 Decree. However, neither Dwayne nor Delmer appeared and the 2006 Decree was entered by default.[7] In that Decree, the district court found that the Property was marital property and awarded one-half to Gordon and the other half of the Property to Dwayne.[8] The effect of that ruling is central to the determination of this appeal.

## II. The 2006 Property Division Order

¶ 22 First, we begin with the proposition that property acquired during marriage is presumed to be marital property. *Manhart v. Manhart*, 1986 OK 12, ¶ 38, 725 P.2d 1234, 1240.

As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall ... make such division between the parties as may appear just and reasonable....

tion of issues not relevant here, the district courts are not "reversed for error unless the error was called to their attention at a time when they themselves could reasonably be expected to correct it." *Gaines v. Sun Refinery & Mktg.*, 1990 OK 33, ¶ 20, 790 P.2d 1073, 1080.

7. Although all of the prior pleadings in the Divorce Action contained a caption listing Gordon as the plaintiff and Dwayne and Ruth or Delmer as defendants, the 2006 Decree is styled: "Carlotta Colene Garrett, Petitioner vs. Dwayne Marvin Garrett, Respondent." At this stage of the proceedings, Gordon could only change the caption of the case with leave of court. 12 O.S.2001 § 2015(A). However, "[t]he court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." 12 O.S.2001 § 78.

8. In this appeal, we express no opinion as to the current ownership of the Property awarded to Dwayne. The issues in this appeal are limited to Gordon's claim to ownership of one-half of the Property.

43 O.S.2001 § 121. Second, the record in the Divorce Action supports the district court's finding that the Property was marital property. The Property had been in Gordon's family since at least 1985, and had been originally owned by Gordon's father who intended for the Property to pass to his children on his death. Snow, Gordon's sister, executed the deeds to the Property to Dwayne and Ruth on December 29, 1993. That same day, Dwayne wrote a check to Snow for $38,470. In the memo line of the check Dwayne wrote "property." The check appears to have been a temporary check for a new account on which Dwayne was initially listed as the sole owner. On January 7, 1994, now using a permanent check on the same account which again listed Dwayne as the sole owner, Dwayne wrote Snow a check in the amount of $1,720 "for tax lien." Delmer was added as a co-owner on this account in April of 1994; Ruth was added as a co-owner in August of 1994.

¶ 23 Dwayne and Delmer were indicted for forging the 1998 deed from Ruth to Ruth and Delmer after Ruth's death. Dwayne was acquitted and the charges against Delmer were subsequently dismissed. Snow testified that she intended to and believed that she was transferring the Property to Gordon and Dwayne as husband and wife. Snow stated she was misled by Dwayne when she signed the deeds to Dwayne and Ruth in 1993. Gordon provided documents which listed Gordon as a grantee in support of Snow's testimony. In addition, Snow's counsel testified that at the closing in 1993, Dwayne promised that on his return to Oklahoma he would put Gordon's name on the deed.

¶ 24 Real estate tax records from Washington County list Ruth as the owner of the Property for 1998 and 1999. Tax records for 2000 through 2009 list Delmer and Ruth as owners of the Property. There are no tax records in this record showing that Ruth or Delmer was listed as an owner of the Property for the period from 1993 through 1997. Not only does the evidence in the record support the district court's finding that the Property was marital property, but also a judgment in an equity case carries with it findings of all facts necessary to support the

judgment. *Tigert v. Tigert*, 1979 OK CIV APP 14, ¶ 21, 595 P.2d 815, 821 (citing *Meyers v. Central Nat'l Bank of Okmulgee*, 1937 OK 498, ¶ 0, 80 P.2d 584 (syllabus 2)).

### III. Personal Jurisdiction Over Delmer in the Divorce Action

¶ 25 In his quiet title action, Delmer claims that he is not bound by the 2006 Decree because he was not served with summons in the Divorce Action. He contends, therefore, that he never became a party in that case either individually or as special personal representative of Ruth's estate. Delmer claims ownership of the Property as the surviving joint tenant of Ruth's 1998 deed, or, in the alternative, as the devisee of the Property pursuant to Ruth's will. In both instances, Delmer's claim derives from Ruth and, therefore, depends on the nature of her interest in the Property.

¶ 26 "A warranty deed . . . shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described . . . ." 16 O.S.2001 § 19. A grantee acquires no interest in property from one who has no interest to convey. *Cox v. Wilson*, 1974 OK 140, ¶ 13, 528 P.2d 707, 710. "Every devise of land in any will conveys all the estate of the devisor therein, which he could lawfully devise . . . ." 84 O.S.2001 § 141. As a result, we need not consider whether Delmer was properly served in his individual capacity in the Divorce Action.

¶ 27 The district court's determination that the Property was marital property depends on and necessarily includes the finding that Ruth acquired no interest in the Property by virtue of the 1993 deeds from Snow. The district court's determination necessarily includes the additional findings that Ruth had no interest to convey to Delmer in 1998, as well as no interest in the Property that would pass to Delmer pursuant to her will after her death. Consequently, Delmer's claim to the Property succeeds or fails based on his argument that he is not bound by the 2006 Decree, because he was not properly served with Gordon's 2004 amended petition. If the judgment roll in the Divorce Action shows that the district court had personal jurisdiction over Delmer, the district court was cor-

rect in refusing to vacate the 2006 Decree in the quiet title action and Delmer's claim to the Property fails.

### A. Personal Jurisdiction over Ruth

¶ 28 The district court's jurisdiction over Ruth in the Divorce Action was clearly established by May 4, 1998, when she filed her answer and counterclaim to Gordon's April 28, 1998 amended petition. *Cherokee Nation v. Nomura*, 2007 OK 40, ¶ 7, 160 P.3d 967, 971 (party making appearance and requesting affirmative relief waives any challenge to personal jurisdiction); *Rogers v. Rodgers*, 1946 OK 49, ¶ 0, 165 P.2d 986 (syllabus 2) (party submits to the jurisdiction of the court and waives plea of lack of personal jurisdiction in answer by seeking affirmative relief). Further:

Objections to the jurisdiction of the court over the person, to the issuance or service of the summons or to the venue of the action are waived and a party submits himself to the jurisdiction of the court if he asks for affirmative relief on a claim which is asserted in a permissive counterclaim.... The assertion of a compulsory counterclaim against a plaintiff does not waive any of the above objections.

Rule 3, Rules for the District Courts of Oklahoma, Title 12, ch. 2, app. Because Ruth's counterclaim for return of personal property did not arise out of the "transaction or occurrence" that was the subject of Gordon's fraudulent transfer claim, it was not a compulsory counterclaim. 12 O.S.2001 § 2013(A). It was, nonetheless, a request for affirmative relief waiving a challenge to personal jurisdiction. Likewise, a defense of lack of jurisdiction over the person, insufficiency of process, insufficiency of service of process is waived if it is not made by motion or not included in a responsive pleading. 12 O.S.Supp.1984 § 2012(F)(1).

¶ 29 Ruth's special appearance and motion to quash only objected to service by publication, and her answer and counterclaim did not challenge the court's jurisdiction over her or the method by which she was served with Gordon's petition. Consequently, the judgment roll in the Divorce Action clearly shows that the district court had personal jurisdiction over Ruth.

### B. Personal Jurisdiction Over Delmer

¶ 30 The dispositive issue in this appeal, however, is whether the district court obtained personal jurisdiction over Delmer in his representative capacity after Ruth's death. To determine that issue, we must first determine what method of service was required to confer the district court's jurisdiction over Delmer in his representative capacity. Ruth's death invoked the provisions of Title 12 O.S.1991 § 2025(A)(1):

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Section 5 of this act and upon persons not parties in the manner provided in Section 4 of this act for the service of a summons. During the pendency of an action any party may file with the court a statement of the death of another party conforming substantially to Form 22 of Section 29 of this act along with proof of death and serve the statement of death and proof of death on all other parties in the manner provided in Section 5 of this act. Unless the motion for substitution is made within ninety (90) days of service of the statement of death, the action shall be dismissed without prejudice as to the deceased party.

As previously discussed, Gordon filed her motion to join Delmer in the Divorce Action in May of 2001 and the district court granted that motion on October 3, 2003. Delmer does not challenge the order substituting him as a defendant for Ruth. Delmer does not contend that the district court lacked personal jurisdiction over him because he was not a resident of Oklahoma, or because he was not Ruth's personal representative. Delmer's challenge is confined to whether he was properly served in the Divorce Action as required by section 2025.

¶ 31 There are no Oklahoma cases that have addressed this issue. However, sec-

tion 2025 of the Oklahoma Pleading Code is patterned after Rule 25 of the Federal Rules of Civil Procedure and, therefore, federal cases interpreting that Rule can be instructive. *Campbell v. Campbell*, 1994 OK 84, ¶ 19, n. 7, 878 P.2d 1037, 1042. The Tenth Circuit has held that "the service required by Rule 25(a)(1) on nonparties, specifically the successors or representatives of the deceased party's estate, must be service pursuant to Fed.R.Civ.P. 4 [the federal counterpart to 12 O.S. § 2004]." *Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir.1990) (holding service by mail of a formal suggestion of death by mail on the deceased plaintiff's attorney as permitted pursuant to Fed.R.Civ.P. 5, the federal counterpart to 12 O.S. § 2005, for service on parties did not trigger the ninety-day time period because the deceased's personal representative was not a party until served with summons pursuant to Fed. R.Civ.P. 4). In *Ransom v. Brennan*, 437 F.2d 513 (5th Cir.1971), the court held that service by mail of plaintiff's motion to substitute on deceased's attorney did not confer personal jurisdiction over the deceased's personal representative.

> We conclude, therefore, that Rule 4 service of the motion to substitute is for the purpose of acquiring personal jurisdiction over non-parties, and Rule 5 service of the motion is not sufficient to acquire such jurisdiction and cannot be employed in lieu of Rule 4.

*Id.,* 437 F.2d at 518. When Ruth died, Delmer was not a party in the Divorce Action and contends that he did not become a party because he "was never served with summons at any time or in any manner whatsoever." We agree that service of summons is the manner of service required by section 2025 for nonparties like Delmer. The plain language of section 2025 requires service "upon persons not parties in the manner provided in Section 2004 of this title for the service of a summons."

¶ 32 However, Delmer's argument that the district court did not have personal jurisdiction over him because Gordon did not serve her amended petition pursuant to section 2004 is misdirected. It is not service of the amended petition by which the district

court obtains jurisdiction over a nonparty personal representative; "the motion to substitute is for the purpose of acquiring personal jurisdiction over non-parties." *Ransom,* 437 F.2d at 518. The same legal principle applies in Oklahoma. "The motion for substitution … shall be served … upon persons not parties in the manner provided in Section 2004 of this title for the service of a summons." 12 O.S.2001 § 2025(A)(1). Even though no summons was issued or served with Gordon's 2001 motion to substitute, we find that fact is not dispositive in this case for the following reasons.

¶ 33 First, the requirement for service of the summons and petition together is not jurisdictional. 12 O.S.2001 § 2004(D). Second, because the last page of Gordon's motion to join Delmer is not included in the record, and the index of pleadings in the Divorce Action indicates that the pleading is "incomplete," the record does not show the manner in which this motion was served. However, the record unequivocally shows that Delmer received a copy of that motion. On May 18, 2001, in response to Gordon's motion to substitute Delmer after Ruth's death, Delmer's counsel filed a special appearance for Delmer individually and as special representative of Ruth's estate objecting to Delmer's joinder in the Divorce Action.

¶ 34 Third, based on the representations of Ruth's counsel at the time he was permitted to withdraw, Delmer knew when he filed his entry of appearance that Ruth's estate was not represented by counsel in the Divorce Action. Finally, even if Gordon's motion to substitute was not served with a summons as required by section 2004, a person may voluntarily appear in a case and thereby submit themselves to the jurisdiction of the court. *Stubblefield v. General Motors Acceptance Corp.,* 1980 OK 164, ¶ 10, 619 P.2d 620, 623; *Wagoner,* 1981 OK 17, ¶ 11, n. 4, 627 P.2d at 431.

¶ 35 Delmer voluntarily submitted to the jurisdiction of the district court in the Divorce Action on May 18, 2001, by filing his special appearance without objecting to personal jurisdiction. Despite the assertion in his motion to vacate to the contrary, Delmer's special appearance did not challenge

the district court's personal jurisdiction over him. Delmer's special appearance raised five arguments: (1) that he had no legal obligation to Gordon by virtue of her marriage to Dwayne and that his joinder, therefore, was improper citing sections 2018, 2019 and 2020 of the Oklahoma Pleading Code, (2) that he had never been enjoined from doing anything, (3) that he owns the Property as the sole beneficiary of Ruth's will, and (4) that a portion of the Property is his homestead. The fifth argument challenged the district court's subject matter jurisdiction over Gordon's action for fraudulent transfer asserting it was an action at law and could not be joined with her equitable action for divorce.[9] However, subject matter jurisdiction is one of the defenses that can be raised with a challenge to the court's *in personam* jurisdiction pursuant to Title 12 O.S.2001 § 2012(B). Nonetheless:

> A defense of lack of jurisdiction over the person ... is waived:
>
> a. if omitted from a motion that raises any of the defenses or objections which this section permits to be raised by motion.

12 O.S.2001 § 2012(F)(1)(a). Because Delmer's special appearance did not challenge the district court's personal jurisdiction over him either individually or in his capacity as special administrator, he waived that defense as of May 18, 2001, and became a party to the Divorce Action.[10]

¶ 36 Further, although the district court had ordered Gordon to serve Delmer pursuant to the provisions of section 2004, the Oklahoma Pleading Code provides and Delmer concedes, that a party is only entitled to service of pleadings like Gordon's amended petition in accordance with 12 O.S.2001 § 2005(B): "Service upon ... a party shall be made by delivering a copy to him or by mailing it to him at his last-known address...." Therefore, when Gordon filed her amended petition including Delmer as a defendant, she was not required to serve that petition on Delmer pursuant to section 2004. She was permitted by section 2005 to mail that pleading to Delmer at his "last-known address." Gordon mailed her amended petition to Delmer at the Rt. 2, Box 1481 address, the only address of record for Delmer in the Divorce Action and the address that Delmer continued to use in this quiet title action. Consequently, service of the amended petition on Delmer, at least in his representative capacity, was complete when it was mailed on May 17, 2004. 12 O.S.2001 § 2005(B)(4). And, the judgment roll shows that not only was Delmer properly served with Gordon's amended petition but also the district court had personal jurisdiction over Delmer at the time the 2006 Decree was entered.

### 1. Notice of the 2006 Pretrial Conference

¶ 37 Based on the applicable standard of review, evidence of personal jurisdiction from the judgment roll would require affirmance but for Delmer's argument that he was also not served with notice of the February 27, 2006, pretrial conference that resulted in the final decree awarding half of the Property to Gordon. We agree with Delmer to the extent that the record in the Divorce Action does not show that a copy of the order setting that pretrial conference was mailed in an envelope addressed to Delmer. However, we do not find that fact dispositive. *"It is the totality of circumstances—not the particular norms of statutory requirements—that dictates the quality of service*

---

9. Delmer's argument on this point is frivolous. "There shall be one form of action to be known as 'civil action.'" 12 O.S.2011 § 2002. And, that has been the law in Oklahoma since at least 1921. *Young v. Campbell*, 1932 OK 533, 16 P.2d 65 (distinction between actions at law and suits in equity is abolished and there is only one form of action).

10. Although Delmer's special appearance was filed in response to Gordon's motion to join him as a defendant rather than her amended petition substituting him as a defendant, we find reliance on section 2012 to construe Delmer's special appearance is proper. Section 2012 specifies the manner in which a defendant responds to a plaintiff's initial pleading. As previously discussed, when dealing with the substitution of parties, the initial pleading is the motion to substitute. That is the pleading by which the court acquires jurisdiction over the new defendant. And, pursuant to section 2025, substitution may be ordered by the court with or without the filing of an amended petition. The Oklahoma Pleading Code "shall be construed to secure the just, speedy, and inexpensive determination of every action." 12 O.S.2001 § 2001.

*necessary to safeguard an individual's property interest at stake." Shamblin v. Beasley,* 1998 OK 88, ¶ 13, 967 P.2d 1200, 1210 (emphasis in the original). Based on the totality of the circumstances evident in this record, Delmer's argument that he did not receive notice of the February 2006 pretrial conference fails for the following reasons.

¶ 38 First, the record in the Divorce Action reflects that in April of 2004, after the order substituting Dwayne as a defendant was entered, counsel for Gordon contacted Delmer to request his consent to an extension of time to file motions but was told counsel's request would have to be addressed to Dwayne. That conversation is documented in an Application for Enlargement of Time filed by Gordon's counsel styled: "Carlotta Gordon, Plaintiff, v. Dwayne Garrett, Delmer B. Garrett, individually, and as Special Administrator of the Estate of Ruth v. Garrett, deceased, Defendants," a copy of which was served on Dwayne at Delmer's address.

¶ 39 Second, after his substitution as a party defendant in the Divorce Action, it became Delmer's obligation to provide the district court with any change of address.

The address of record for any . . . party appearing in a case pending in any district court shall be the last address provided to the court. . . . Any . . . unrepresented party has the duty of maintaining a current address with the court. Service of notice to the address of record of . . . an unrepresented party shall be considered valid service for all purposes, including dismissal of cases for failure to appear.

12 O.S.Supp.2001 § 2005.2(D), the statute in effect when Delmer was served with the amended petition. Delmer does not argue that he failed to receive notice because Rt. 2, Box 1481 was not his mailing address.

¶ 40 Third, the record shows that, although addressed to Dwayne, a copy of the order setting the February 27, 2006, pretrial conference was mailed by certified mail to Delmer's Rt. 2, Box 1481 address. The order setting the pretrial is styled: "Carlotta Colene Garrett, Plaintiff vs. Dwayne Marvin Garrett, Defendants." Delmer complains

that his name was "inexplicably dropped" from the caption of the case. The caption of the order mailed to Delmer's address fully complies with Oklahoma law.

Every pleading shall contain a caption. . . . In the petition the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties. . . .

12 O.S.2001 § 2010(A). Further, the order was mailed to the only address in this record identified with Delmer. More importantly, the record shows that the order setting the February 27, 2006, pretrial conference was received. Four days after the order was filed, Dwayne filed a motion to vacate that order objecting to the location of the pretrial conference in a different county.[11] Oklahoma case law supports the conclusion that the mailing of the notice of pretrial conference to Dwayne satisfied the notice requirement for Delmer based on the facts in this case.

¶ 41 Dwayne and Delmer had a unified interest in the Property in depriving Gordon of any ownership. Dwayne and Delmer had the same mailing address. And, Delmer claimed the Property was his homestead. Based on facts almost identical to these, the Supreme Court found service on a husband was effective as to his wife in *Shamblin.*

We hence apply the totality-of-circumstances test to conclude that there was here a reasonable probability that if the service of process directed to the wife was accepted and signed by the husband on her behalf, the nonreceiving spouse will be afforded actual notice of the pendency of the tax resale. The notice served on the husband was beneficial to the preservation of both spousal parties' interests in the then commonly owned and possessed property, and the impact of the then-impending tax resale upon their individual interest was identical. In sum, the service on the wife through her husband does not fall here below the minimum standards of process that was her due.

11. We resolved that issue adversely to Dwayne in the appeal in Case No. 103,841, previously cited.

*Id.,* 1998 OK 88, ¶ 16, 967 P.2d at 1211.[12] However, unlike the husband and wife in *Shamblin,* neither Delmer nor Dwayne has filed an affidavit stating that Delmer did not have actual notice of the February 2006 pretrial conference. "It is the totality of the circumstances and conditions of each individual case that determines if the constitutional requirements of due process are satisfied." *Luster v. Bank of Chelsea,* 1986 OK 74, ¶ 17, 730 P.2d 506, 510 (voiding tax deed where notice was sent to a party erroneously listed in the tax rolls as owner but not to the actual owner). We find that Delmer had the constitutionally and statutorily required notice of the February 27 pretrial conference.

¶ 42 This result is also consistent with the Supreme Court's decisions in *Cartwright* and *Wagoner* holding that a judgment is binding even on nonparties who (1) had actual notice of the action, (2) were adequately apprised of the nature of the adverse party's claim, and (3) were afforded an opportunity to defend against that claim through parties actually appearing in the case. *Cartwright,* 1981 OK 4, ¶¶ 14–15, 623 P.2d at 611–12; *Wagoner,* 1981 OK 17, ¶ 9, 627 P.2d at 430–31. In this case, it is undisputed that Delmer had actual notice of Gordon's claim to the Property—he filed an entry of appearance and objection to being joined as a defendant in the Divorce Action. Further, not only did he do so with the advice and assistance of counsel, but also the substance of that filing addresses the merits of Gordon's claim and asserted defenses to that claim. Finally, although Delmer did not file any pleading or motion after his entry of appearance, nothing in this record shows that he was prevented from doing so.

¶ 43 However, after Delmer's lone filing, Dwayne filed discovery requests to Gordon, various requests to disqualify the assigned judge, a notice of *lis pendens,* a "Notice and Warning," a motion to dismiss, a motion for summary judgment and the appeal of the 2006 Decree previously discussed. The common substantive theme in these filings asserted that Gordon had no interest in the Property. Not only were the issues raised by Dwayne essentially the same as issues raised by Delmer in his entry of appearance, but also Delmer has raised no substantive defense in this quiet title action that was not raised in the Divorce Action. The fact that Dwayne has disclaimed any interest in the Property suggests that his tenacious and persistent *pro se* defense of Gordon's claim to the Property was to protect Delmer's interest rather than any interest of his own. In such circumstances, Delmer would be considered to have participated in and controlled the defense in the Divorce Action. He is, therefore, bound by the 2006 Decree pursuant to the rule announced in *Cartwright.*

> Judgments bind only parties and privies—not strangers or persons not parties to the action. Included under the rubric of "parties" are also persons who, though not nominal parties to the action, have control of the prosecution or defense in furtherance of their own interest and who enjoy, because of factual circumstances, all the rights of an actual party. A person falling in this category does become a privy in interest and is as completely bound by the judgment as if he had actually been named in the litigation. Want of service of process on a party under these circumstances is not prejudicial nor does it raise due process implications.

*Cartwright,* 1981 OK 4, ¶ 14, 623 P.2d at 611.

¶ 44 We find no basis in this record for holding that, in his representative capacity as special personal representative, Delmer was not properly substituted as a defendant in the Divorce Action for Ruth's estate, served with Gordon's amended petition and afforded notice of the 2006 pretrial conference. Because our review of the judgment roll reveals that the district court had personal jurisdiction over Delmer at the time the 2006 Decree was entered, we do not consider the remaining nonjurisdictional arguments raised by Delmer in this appeal.

---

12. *Cf., Tucker v. New Dominion, L.L.C.,* 2010 OK 14, 230 P.3d 882 (publication service on "Olinka Hardy" was sufficient to join Olinka Hardy as a defendant). But see, *Valdez v. Occupants of 3908 SW 24th Street,* 2011 OK 99, 270 P.3d 143 (service by mail on daughter and joint tenant was insufficient as to father who had no access to the post office box where the notice was mailed). We find *Valdez* distinguishable because the notice of pretrial was mailed to Delmer's home.

## CONCLUSION

¶ 45 Delmer filed this quiet title action claiming sole ownership of Property located in Washington County, Oklahoma. The Property had previously been the subject of a property division order in the Divorce Proceeding between Delmer's son and Gordon, one-half being awarded to each party. Because Delmer was properly made a party in the Divorce Proceeding, he is bound by the court's property division order in the 2006 Decree. Consequently, the district court in this case correctly denied Delmer's request to vacate the property division order and its order partitioning the property between Delmer and Gordon.

¶ 46 **AFFIRMED.**

BARNES, V.C.J., and WISEMAN, J., concur.