A91A2226. HAMILTON v. DELOITTE, HASKINS & SELLS et al.
(417 SE2d 713)

COOPER, Judge.

Appellant appeals the trial court's grant of summary judgment to appellees.

Between July 15, 1987, and August 20, 1987, appellant purchased 45,000 shares of stock in Ocilla Industries, Inc. ("Ocilla") for $249,875. The purchases were made by appellant after he had studied the company and reviewed its Form 10-Q and Form 10-K reports to the Securities & Exchange Commission ("SEC") and annual reports to shareholders, and after consultation with his own accountant and stockbroker. Ocilla's 1987 10-K report, filed in September, reported a $6.9 million loss and detailed several improprieties in the management of the company and impending litigation against the company. Following Ocilla's disclosures, the price of its stock plummeted; however, appellant purchased 60,000 additional shares for $163,219, in an effort to break even if the price of the stock increased. Appellant sustained a total loss in excess of $400,000 and brought this action against appellees Deloitte, Haskins & Sells and Deloitte Touche f/k/a Deloitte, Haskins & Sells (hereinafter collectively referred to as "DHS"), Ocilla's former auditors, and Elijah Waldron, Ocilla's former president, for fraud, negligence and violations of the Georgia Racketeer Influenced & Corrupt Organizations Act (Georgia RICO). Appel-

lant alleged in his complaint that DHS misrepresented Ocilla's financial condition in financial statements and reports filed with the SEC, and he claims that he relied on these financial statements and reports when he began purchasing, and as he continued purchasing, Ocilla stock. DHS and Waldron's motions to dismiss the complaint pursuant to OCGA § 9-11-12 (b) (6) were treated as motions for summary judgment upon the parties' stipulation to the court's consideration of certain SEC filings by Ocilla. Included among those documents was Ocilla's July 8, 1987 Form 8-K report, filed with the SEC one week prior to appellant's first purchase, which contained the following statement: "The Registrant has appointed its general counsel, Smith, Gambrell & Russell of Atlanta, Georgia, to conduct a special investigation of certain financial irregularities which occurred with respect to the fiscal year ended February 28, 1987 and prior years and to report its findings to a committee of the Board of Directors. In this connection, it should be noted that the Registrant's financial statements previously issued for each of the two fiscal years ended February 28, 1986 and for each of the three quarters ended November 29, 1986 may require revision and should not, therefore, be relied upon pending the completion of the special investigation."

Granting summary judgment, the trial court held that although appellant had no actual knowledge of the information contained in the Form 8-K report, the filing of the Form 8-K with the SEC on or about July 8, 1987, provided constructive notice to the entire investing public of the information contained therein and that it was immaterial whether appellant had actual knowledge of the information. The trial court stated further that because appellant "made his first and subsequent purchases of Ocilla stock after he was charged with such constructive notice, as a matter of law [he] cannot demonstrate reasonable or justifiable reliance on his part on any misrepresentations or nondisclosures contained in Ocilla's financial statements and reports filed with the SEC prior to the filing of Ocilla's July 8, 1987 Form 8-K report." This appeal followed.

Appellant enumerates as error the trial court's determination that the filing of the Form 8-K report with the SEC constituted constructive notice to the public of its contents and that appellant could not justifiably rely on statements and reports prepared by DHS once those statements had been publicly disavowed in the Form 8-K report. Appellant contends that the doctrine of constructive notice should not have been applied in the context of this case. We disagree. At the time the Form 8-K report was filed with the SEC, appellant had not purchased any Ocilla stock and was only a potential investor; therefore, neither Ocilla nor DHS had any reason to report to appellant personally regarding Ocilla stock. The SEC serves, in part, as a conduit through which information is made available to potential in-

vestors. See *Gearhart Indus. v. Smith Intl.*, 741 F2d 707, 713 (1984); *Feldman v. Simkins Indus.*, 679 F2d 1299, 1306 (1982). By filing the Form 8-K report, Ocilla satisfied its duty to disclose the substantial net loss for the 1987 fiscal year. See 4 Fed.Sec.L.Rep. par. 31,003, at 21,994. Appellant cannot claim to have been defrauded in view of the Form 8-K filing. See *Gert v. Elgin Nat. Indus.*, 773 F2d 154, 157-159 (1985). Moreover, the record reveals that Ocilla announced the filing with a press release and that the filing became the subject of extensive media coverage. See *In re Convergent Technologies &c.*, 721 FSupp. 1133, 1139 (1988) (securities action could not be maintained due to extensive publicity of company's financial problems). Appellant suggests no better way of providing notice to persons similarly situated; therefore, we conclude that the Form 8-K report was a sufficient warning to potential investors in Ocilla stock that Ocilla's previous filings with the SEC were not to be relied upon. The trial court did not err in granting summary judgment to appellees.

*Judgment affirmed. Birdsong, P. J., and Pope, J., concur.*

Decided March 19, 1992 —
Reconsideration denied April 1, 1992 — 

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., William S. Stone*, for appellant.
*Weisz & Port, Robert C. Port*, for appellees.
Elijah Waldron, *pro se.*