MINERAL ACQUISITIONS v. HAMM



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MINERAL ACQUISITIONS v. HAMM

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MINERAL ACQUISITIONS v. HAMM
2020 OK CIV APP 55
Case Number: 118255
Decided: 07/28/2020
Mandate Issued: 11/05/2020
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2020 OK CIV APP 55, __ P.3d __

 

MINERAL ACQUISITIONS, LLC and SUE ANN ARNALL, Plaintiffs/Appellants,
v.
HAROLD GLENN HAMM, Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA
HONORABLE DON ANDREWS, TRIAL JUDGE
AFFIRMED
Amy L. Alden, Jack S. Dawson, MILLER DOLLARHIDE, Oklahoma City, Oklahoma, for Plaintiffs/Appellants
Michael Burrage, WHITTEN BURRAGE, Oklahoma City, Oklahoma, and
Julia C. Rieman, Craig L. Box, GUNGOLL, JACKSON, BOX & DEVOLL, P.C., Enid, Oklahoma, for Defendant/Appellee
STACIE L. HIXON, JUDGE:
¶1 Sue Ann Arnall (Arnall) appeals summary judgment in favor of Harold Hamm (Hamm) on her claims of breach of fiduciary duty, breach of contract, intentional interference with prospective economic advantage, actual or constructive fraud, and unjust enrichment. Mineral Acquisitions, LLC, appeals summary judgment in favor of Hamm on its claims of breach of fiduciary duty and demand for winding up and distribution of assets.
¶2 The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2019, ch. 15, app.1.
¶3 Upon review of the record and the parties' briefing, the record in the underlying case, and applicable law, we affirm the trial court's Order of August 20, 2019.[1] 

BACKGROUND

¶4 Arnall and Hamm divorced on November 10, 2014, by separate proceeding, Hamm v. Hamm, Case No. FD-2012-2048 (District Court of Oklahoma County). That protracted proceeding required the disposition of the parties' considerable assets, including the task of valuing Hamm's marital contributions to Continental Resources, Inc. (CRI). Hamm founded the company prior to his marriage to Arnall in 1988, and, at the time of the divorce, was its majority shareholder.
¶5 As part of the valuation, the court considered and addressed an Oklahoma limited liability company formed by Hamm called Mineral Acquisitions, LLC, in 2001. According to that entity's Operating Agreement, he and Arnall were its only members, each owning 50% of that entity. In turn, Mineral Acquisitions was the sole member of Jolette Oil (USA), LLC, formed in 2002.[2] Jolette was formed to unobtrusively acquire certain mineral interests in an area known as the Bakken field in North Dakota and to operate a particular well. Once acquired, CRI purchased all of Jolette's assets at book value for $4.5 million in 2005. Hamm caused Mineral Acquisitions to be dissolved on June 26, 2006, and ceased filing its annual reports, certificates, or fees, with the Oklahoma Secretary of State. Jolette was subsequently dissolved.
¶6 The parties' assets acquired during marriage were distributed in the divorce. Among other assets, Arnall was awarded half of the purchase price for Jolette's assets. The value of Hamm's marital contribution to CRI was a significant issue in the divorce, and included consideration of the value of the assets CRI acquired from Jolette. Arnall was awarded a portion of the value of Hamm's marital contributions to CRI, among other assets, which she appealed. The Oklahoma Supreme Court dismissed that appeal on April 28, 2015, finding Arnall accepted Hamm's payment of the full judgment, while the appeal was pending. Hamm dismissed his own counter-appeal in the divorce proceeding. Judgment entered in the divorce is final.
¶7 On August 20, 2015, Arnall filed the underlying suit on her own behalf against Hamm for breach of fiduciary duty, breach of contract arising from breach of Mineral Acquisitions' Operating Agreement, intentional interference with prospective economic advantage, actual or constructive fraud, and unjust enrichment. She asserted derivative claims on behalf Mineral Acquisitions for breach of fiduciary duty/self dealing, and seeking wind up and distribution of its only asset, the mineral interests acquired by Jolette and transferred to CRI.
¶8 The crux of these claims was Arnall's contention that Hamm improperly transferred Jolette's assets at book value to CRI, depriving her of her share of their market value, and dissolved Mineral Acquisitions without her knowledge or consent. Arnall alleged that she did not learn of her interest in Mineral Acquisitions until discovery in the divorce case. She contended that the market value of the mineral interests transferred to CRI was in excess of $900 million.
¶9 The trial court granted summary judgment to Hamm on the claims of Arnall and Mineral Acquisitions in their entirety, finding that Arnall's claims in the underlying action were or could have been asserted in the divorce proceeding, and were barred by res judicata or claim preclusion.
¶10 The trial court also concluded that Arnall had actual and/or constructive knowledge of public filings made on behalf of Mineral Acquisitions for a period of nine years prior to filing of the suit, and that Arnall's claims were barred by the statute of limitations "up to and not exceeding five (5) years in duration." Finally, the trial court determined that Mineral Acquisitions was no longer a corporation in good standing, was deemed cancelled as a matter of law in 2009, and did not have standing to sue Hamm.[3] 
¶11 Arnall appeals.

STANDARD OF REVIEW
¶12 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e., whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1052. "Therefore, as the decision involves purely legal determinations the appellate standard of review of a trial court's grant of summary judgment is de novo. Id. The Court will "examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." Ross by and through Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535, 536. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. Id.
ANALYSIS
1. Arnall's Claims
a. Res judicata or claim preclusion
¶13 The trial court concluded Arnall's claims were barred by the doctrine of res judicata, now called claim preclusion,
[4] upon the following facts held undisputed:
6. Extensive discovery was conducted by ARNALL and HAMM in the Divorce Proceeding relating to MINERAL ACQUISITIONS and Jolette Oil (USA), LLC. 
7. On April 13, 2014, ARNALL and her counsel of record were aware of Jolette Oil (USA) and MINERAL ACQUISITIONS' asset transfers to Continental Resources, Inc. and acknowledged claims that ARNALL could assert against HAMM in the Divorce Proceeding. 
8. ARNALL called witnesses that testified in the trial of the Divorce Proceeding that assets transferred from Jolette Oil (USA) and MINERAL ACQUISITION [sic] to Continental Resources, Inc. were done so at book value and not market value; that ARNALL's damages equaled $916,799,000. 
9. Claims sought by ARNALL in the Divorce Proceeding and ruled upon by the Trial Court, are the same claims asserted in the instant case.
10. Claims sought by ARNALL in the appeal of the Divorce Proceeding are the same claims asserted in the instant case. 
11. ARNALL's appeal of the Divorce Proceeding was dismissed by the Oklahoma Supreme Court on June 19, 2015.
[5] 
¶14 In essence, the trial court concluded that Arnall's interest in the assets of Mineral Acquisitions, and dispute of wrongful transfer or dissolution, was determined or could have been determined in the divorce proceeding. Arnall disagreed, and contended her claims were based not on the disposition of assets, but sought damages for distinct claims of Hamm's alleged wrongful conduct.
¶15 "Under the principle of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action." Miller v. Miller, 1998 OK 24, ¶ 23, 956 P.2d 887, 896. The purpose of the doctrine is to prevent "piecemeal litigation" caused by splitting a single claim into separate suits. Id. "When claim preclusion is asserted, the court must analyze the claim involved in the prior action to ascertain whether it is in fact the same as that asserted in the subsequent action." Id. "The doctrine requires an identity of subject matter, of the parties and their privies, of the capacity of the parties and of the cause of action." Barker v. State Ins. Fund, 2001 OK 94, ¶ 11, 40 P.3d 463.
¶16 "Whether preclusion doctrine will apply in any particular case is sometimes a question of law and in others a mixed question of law and fact." Feightner v. Bank of Okla, N.A., 2003 OK 20, ¶ 3, 65 P.3d 624. Claim preclusion is a question of law if the facts are undisputed, the question can be answered solely by reviewing the previous judgment, or by inspection of the record in the previous proceeding. Id.
¶17 There is no dispute that the parties, or their privies, are the same in both actions. However, on summary judgment, Arnall contended that her tort claims for damages cannot be considered part of the claim or cause of action at issue in a divorce proceeding, relying on Miller, 1998 OK 24. Specifically, Arnall relied almost entirely on Miller's comment upon the definition of "claim" provided by Retherford v. Halliburton, 1977 OK 178, 572 P.2d 966:
¶18 In Retherford, [the Oklahoma Supreme Court] defined claim
[6] as:
"a legal concept which has no separate existence in the natural order of things. It is what makers of legal policy, the Legislature and the courts say it is. It exists to satisfy the needs of plaintiffs for a means of redress, of defendants for a conceptual context within which to defend an accusation, and of the courts for a framework within which to administer justice."
Considering in light of this definition the claim pressed in the divorce action and that advanced in this tort case, we conclude that the two lawsuits do not tender the same claim. A civil action in tort is fundamentally different in a divorce proceeding. The purpose of a tort action is to establish liability for a legal wrong and to recover damages. The purpose of a divorce action is to end the marital relationship of a husband and wife, to determine the parties' rights and responsibilities to each other and to any children, and to divide marital assets. The divorce action did not involve any allegations of tortious behavior of the kind asserted here. The two actions being distinct, claim preclusion is not invocable.
Miller, 1998 OK 24, at ¶¶23-24 (quoting Retherford, 1977 OK 178, at ¶ 9).
¶19 While Arnall interprets this language as conclusively establishing that a tort claim for damages and matters addressed in a divorce action are at all times distinct, we do not interpret Miller as restrictively. Miller concerned a husband's suit against his former wife and her parents for misrepresenting he was the father of a child, only to reveal after the divorce that the child was not his. Though the divorce decree recited there was a child born to the parties, its purpose was not to determine the paternity, and that issue was plainly distinct from the purposes of the divorce. Miller must be read in context.
¶20 As Miller also recognizes, one of the purposes of the divorce action is to divide property acquired from the joint industry of spouses during the marriage. The question is whether division of marital property that included assets of Jolette, as the apparent sole asset of Mineral Acquisitions, transferred to CRI, comprises the same cause of action as Arnall's claim for breach of contract and tort damages arising from wrongful disposition of those same assets and subsequent dissolution of Mineral Acquisitions.
¶21 Hamm relied on Jones v. Jones, 1968 OK 84, 442 P.2d 319, in support of his argument for claim preclusion.[7] Jones was a divorce action between two equal owners of shares in a corporation. Id. at ¶ 6. The wife alleged that the husband transferred most of his shares to his mother shortly before the divorce to defraud wife of her interest in the corporation. The trial court initially awarded wife only her individual shares. On request for clarification by the husband, the trial court added husband's mother to the action, conducted a second trial, and awarded the wife all of the corporation's stock based on claims of fraudulent transfer, through an order nunc pro tunc. Id. at ¶ 7.
¶22 On appeal, the Supreme Court vacated the judgment. Noting that the wife had raised the fraudulent transfer in the divorce, though demanding no relief on that ground, the Court explained:
It appears to this court under these circumstances the question of ownership of the stock and plaintiff's right thereto would be effectively disposed of, since the decree describes and disposes of all the corporate shares, and releases any restraint imposed upon defendants as to the stock held by them. However, we need not determine this exact question. The question of stock ownership and plaintiff's rights therein was presented by plaintiff's petition and by the restraining order, and was a matter germane to the divorce, alimony and division of the property between the parties. It was a matter that could have been litigated in the divorce action. 
Id. at ¶ 19. "Until properly set aside, a judgment is conclusive not only concerning all questions actually decided but also as to all germane issues that might have been litigated." Id. at ¶ 21.
¶23 Jones holds that matters germane or relevant to the allocation of property in the divorce should be litigated in the divorce or will be barred. We look to Feland v. High, 1937 OK 247, 67 P.2d 967, for instruction in applying claim preclusion to separate tort or contract theories of action.
¶24 In Feland, a wife won judgment against her former husband for converting her separately held stock. Husband contended a previous divorce and property settlement barred the conversion action. Wife knew by time of trial in the divorce case that her stock was missing and had conducted discovery on that issue. The judgment purported to dispose of all property rights, but did not address her rights to the stock. Acknowledging statutory requirements that a divorce settle all property rights and restore spouses' individual property,
[8] the Court determined the disposition of property in the divorce action operated as claim preclusion as to the conversion action. The Court stated:
Plaintiff's actions in giving a receipt in full settlement; in serving defendant in the divorce case with a notice to take depositions in Guthrie; and in testifying at the time of the divorce she knew that the defendant had used the stock for his own purposes, preclude her from claiming that the matter is not settled by the decree of divorce. 
Feland, 1937 OK 247, at ¶ 17.
¶25 The rule applied in Feland or Jones applies to claims for damages in tort that are germane to distribution of marital property. In more modern parlance, determination of rights to marital property in a divorce proceeding may preclude later claims in tort or contract, if those theories arise from the cause of action, as defined in Retherford, i.e., the same wrongful act or transaction. If the transfer of assets or dissolution of an entity must be, or is, resolved to determine the parties' rights to marital property, claim preclusion applies, regardless of legal theory.
¶26 Other jurisdictions' application of this principal under similar facts is persuasive. For instance, in Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380 (N.D. 1992), the court reversed a wife's award of back wages for work during the marriage against her former husband's closely-held corporation, as barred by judgment in their previous divorce proceeding. Id. at 385. The court reasoned that both the closely-held corporation and claim for back wages were marital property subject to disposal in the divorce. Id. "Viewed either as an asset of Susan's or a debt of HEI's, Susan's unasserted claim for back wages certainly affected the value of the marital estate." Id. "As such, Susan's claim for back wages arose out of the same facts and circumstances surrounding the parties' valuation of the marital estate and subsequent stipulated property distribution finalized in the divorce judgment." Id.
¶27 In Trahan v. Trahan, 839 A.2d 1246 (Vt. 2003), a husband and wife disputed the value of their payroll company during their divorce. At that time, the company held significant assets in trust, which the family court determined likely belonged to the payroll company's clients (though not clear), a key issue in the divorce. Later, the wife discovered a significant amount of the funds in trust had been transferred, possibly improperly, before the divorce was final, and filed a shareholder derivative action. Id. at 1247. The trial court dismissed the wife's claims under the doctrine of issue preclusion. On appeal, the wife argued the issue in her subsequent suit considered the distinct issue of the husband's wrongful conduct. The appellate court disagreed, stating, "The key issue here is whether the funds that were placed in trust belonged to [company] and its shareholders or were the property of the company's clients. . . ," litigated in the divorce proceeding. Id. at 1248. Though wife argued she did not know about the transfer during the divorce, the court determined she had adequate opportunity to contest ownership of the funds when the marital estate was distributed. Id. at 1248-49.
¶28 Dahn v. Dahn, 346 S.W.3d 325 (Mo. Ct. App. 2011) considered a wife's appeal of the dismissal of claims for conversion, negligence and breach of fiduciary duty against her former husband for conversion of distribution checks payable to her individually, as barred by claim preclusion. Husband and wife were joint owners of a corporation. During the divorce, the wife alleged that, by diverting her distributions, the husband deprived her of business income, violated corporate bylaws, and diverted corporate assets. She argued that "[f]or a complete, fair and equitable division of the marital estate and for complete relief to be granted" the diverted funds should be restored to her. Id. at 328-29. The parties settled. The judgment dissolving the marriage disposed of all property and debts, and awarded the husband the stock and bank account containing diverted funds.
¶29 On appeal, the court affirmed dismissal of the wife's subsequent suit, stating:
. . .the dissolution court was empowered to afford Wife meaningful relief concerning the checks, either by ordering Husband to reimburse her for the value of this misappropriated marital property, or by imputing the value of the absent funds to Husband in any property division. The parties' marital estate at the time of the dissolution judgment appears to have been substantial enough to have enabled the court to fully compensate Wife for any misappropriated marital property. While Wife's current legal theories may entitle her to different or broader relief than was available in the dissolution action, the differing legal theories, and the differing relief available, are not enough to differentiate the "claim" asserted in both actions. Moreover, to the extent Wife desired relief beyond that available in dissolution, she was entitled to join her current tort claims, as separate causes of action, with her petition seeking dissolution of marriage.
Id. at 333.
[9] See also Jones v. Porter, 2020 WL 620270, __ F.Supp.3d __ (D. Me. Feb. 10, 2020)(wife's claim for breach of contract barred by divorce judgment; adjudication of agreements was necessary to define marital estate and spouses' contributions thereto).
¶30 We find these cases persuasive in our application of Oklahoma law to hold Arnall's claims for breach of contract and in tort against Hamm arise from the same cause of action as disposition of assets in the divorce proceeding. Though Arnall now asserts different legal theories, identification and award of the individual and joint property of Arnall and Hamm were at issue in the divorce proceeding, including Arnall's interest in assets of Jolette, and hence Mineral Acquisitions, transferred to CRI. That interest was itself a marital asset or debt against the marital estate, which should have been and was raised in the divorce proceeding.
¶31 Arnell's briefing acknowledged her counsel's "aggressive" discovery regarding Jolette and Mineral Acquisitions during the divorce proceedings. Arnall did not dispute that she proposed findings of fact in the divorce proceeding that acknowledged her 50% interest in Mineral Acquisitions, and hence Jolette; that Jolette's assets were transferred for book value to CRI in 2005; and that Jolette received no consideration for the reserve value of its leases, which Arnall contended exceeded $900 million. Arnall does not dispute that, like Dahn, she requested the divorce court find:
The Court concludes that Respondent's in-marriage disposition of business interests owned by Petitioner for less than the fair value thereof is relevant to the determination of what is an equitable division of property.
[10] 
Hamm's alleged wrongful disposition of Arnall's assets was at issue and decided in the decree disposing of each party's equitable share of marital property. The divorce decree references Arnall's ownership in Mineral Acquisitions, the transfer of Jolette's interest to CRI and book value, and the value of those assets in the hands of CRI. Even if these issues were not considered, Arnall's claims here would impact the value of the marital estate and should have been raised in the action purporting to dispose of all separate and joint marital property of the parties. Accordingly, Arnall's claims in the underlying action are precluded by the doctrine of claim preclusion.

b. Jurisdiction of the special judge.
¶32 Arnall also argued that the divorce judgment does not bar her claims, because claim preclusion requires a determination before a court of "competent jurisdiction." She reasons that the special judge who ruled in the divorce proceeding was limited in jurisdiction to actions for recovery of money damages not exceeding $10,000, and could not have resolved her tort claims, if raised. See 20 O.S. 2011, § 123(A)(1).
¶33 This argument is without merit. The decree dividing property in the divorce case was within the special judge's authority under section 123 and has preclusive effect on Hamm's claims for damages, even if contract and tort theories of recovery were not raised in that action. There cannot be an objection now that the judge was unauthorized to render judgment in that case. See generally, Kellenberger v. Guaranty Loan and Inv. Corp. of Tulsa, 1974 OK CIV APP 23, 530 P.2d 574.[11] 
¶34 Further, Arnall's claims were brought in the District Court of Oklahoma County, a court of indisputably competent and general jurisdiction to hear her claims. See Okla. Const., Art. 7, § 7. Among other subjects, section 123 provides special judges may hear actions for recovery of money that do not exceed $10,000, unless the parties agree. We do not know whether Arnall would have agreed and decline to speculate. However, had she asserted those theories, while the case might have been transferred to another judge, any claim she raised would be heard in a court of competent jurisdiction -- the District Court of Oklahoma County.

¶35 In summary, Arnall's claims for damages against Hamm arise from the same transaction or occurrence which was considered and determined in the property distribution resolved in the divorce proceeding. The trial court's grant of summary judgment based on undisputed material facts that Arnall's claims were barred by claim preclusion was therefore correct.
2. Statute of Limitations
¶36 The trial court also determined that Arnall had actual or constructive knowledge of her claims for approximately nine years before filing suit and held her tort and breach of contract claims were barred by even the longest potential statute of limitations of five years applicable to her breach of contract claim.
¶37 "A statute of limitations begins to run when a cause of action accrues." Wille v. Geico Cas. Co., 2000 OK 10, ¶ 10, 2 P.3d 888. "This happens when a litigant can first maintain an action to a successful conclusion." Id. Tort claims generally accrue at the time the injury to the plaintiff occurs. Stephens v. General Motors Corp., 1995 OK 114, ¶ 12, 905 P.2d 797. Breach of contract claims accrue when the party asserting them first acquires the right to sue. Kinzy v. State ex rel. Okla. Firefighters Pension and Retirement System, 2001 OK 24, ¶ 11, 20 P.3d 818. Fraud claims are deemed to have accrued upon discovery of the fraud. 12 O.S. 2011, § 95(3).
¶38 Arnall's claims arise from the sale of Jolette's assets to CRI in 2005 and subsequent dissolution of Mineral Acquisitions in 2006. Unless the discovery rule or another method of tolling applies, Arnall could first have sued for the wrongful sale of Jolette's assets at less than market value in 2005, and for wrongful disposition of Mineral Acquisitions in 2006. Arnell contended she did not know of her interest in Mineral Acquisitions or of the transfer of Jolette's mineral interests at book value until her divorce proceeding in 2013. She relied on the discovery rule and the doctrine of "adverse domination," and offered no other grounds for tolling the statute of limitations.
[12] 
¶39 First, Arnall asserted claims both in tort and contract. While the trial court determined that Arnall's breach of contract claim accrued within five years of when she knew or could have known of the breach, Oklahoma law does not appear to apply the discovery rule to breach of contract. Samuel Roberts Noble Foundation, Inc. v. Vick, 1992 OK 140, ¶¶ 11-12, 840 P.2d 619; Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 17, 222 P.3d 21, 25.[13] "[T]he Court is not bound by the trial court's reasoning and may affirm the judgment below on a different legal rationale." Hall v. GEO Group, Inc., 2014 OK 22, ¶ 17, 324 P.3d 399. Arnall's allegations of breach concerned disposition of Jolette's assets at less than fair market value, making it impossible for Mineral Acquisitions to conduct its ordinary business and concerned the unauthorized dissolution of Mineral Acquisitions.[14] These claims accrued at the time of breach and are time-barred.

¶40 We next consider Arnall's knowledge and/or constructive notice of her claims in relation to when her tort claims accrued. The trial court found the following facts undisputed:
17. ARNALL had actual and/or constructive knowledge of public filings made on behalf of MINERAL ACQUISITIONS and other related entities for a period of nine (9) years prior to filing this lawsuit. 
18. The "Adverse Domination Doctrine" and the "Discovery Rule" do not toll the applicable statutes of limitation herein since ARNALL had actual knowledge of public filings made on behalf of MINERAL ACQUISITIONS and other related entities.
19. Specifically, ARNALL's breach of contract action relating to MINERAL ACQUISITIONS' Operating Agreement must have been filed within five (5) years following her knowledge of the breach.
(Citations omitted). In support of Fact No. 19, the court also stated:
ARNALL maintains that she was not aware of the existence of MINERAL ACQUISITIONS' Operating Agreement until it was produced during the discovery stage of her divorce proceeding. However, her signature appears on numerous business records related to MINERAL ACQUISITIONS from the beginning of its existence, to which ARNALL was aware. It was incumbent upon her to determine whether MINERAL ACQUISITIONS' [sic] existed, especially once filings became a matter of public record. 
Order, p. 4, n.25.
¶41 We examine whether the record supports a determination of Arnall's undisputed actual or constructive notice. Arnall did not dispute that she knew of the existence of Mineral Acquisitions and Jolette, or their acquisition of mineral interests when she was working at CRI in the early 2000. [15] While Arnall contends she did not know of her interest in Mineral Acquisitions until her divorce, her disputes of Hamm's proposed undisputed facts are unaccompanied by evidence.[16] However, Arnall did cite testimony from the divorce case in her response to Hamm's brief on summary judgment, where she remarked she did not know of Mineral Acquisitions without reference to time period or context. [17] 
¶42 We need not determine whether this testimony, without more, creates a dispute of fact regarding Arnall's knowledge of her interest in Mineral Acquisitions. Mineral Acquisitions' Operating Agreement bears the signature of members Harold Hamm and "Sue Ann Hamm."[18] Jolette's Operating and Member Control Agreement bears the signature of "Sue Ann Hamm, Vice President." Arnall's briefing acknowledged she signed Mineral Acquisitions' Operating Agreement, at the very least.[19] "[S]omeone who signs an agreement is presumed to know its contents and one with an opportunity to read the contract which he signs cannot escape liability under the contract." Chaney v. Chevrolet, 2015 OK CIV APP 55, ¶ 13, 350 P.3d 170 (citing Mayfield v. Fidelity State Bank of Cleveland, 1926 OK 665, 249 P. 136).[20] 
¶43 Arnall is presumed to have knowledge that she held an interest in Mineral Acquisitions. However, did Arnall have actual knowledge or constructive notice of Hamm's transfer of Jolette's assets at book value, and/or dissolution of Mineral Acquisitions? The trial court appears to have determined that Arnall's actual or constructive notice was established through CRI's public SEC filings and/or public filing of Articles of Dissolution.

¶44 On summary judgment, Hamm presented a prospectus filed by CRI with the SEC on May 16, 2007, and offered by Arnall as an exhibit in the divorce trial, which stated:
Mineral Acquisitions, LLC ("Minerals"), wholly owned by our principal shareholder and his wife, owns royalty interests in the Cedar Hills North Unit operated by us . . . . Minerals also owns 100% of Jolette Oil (USA) LLC ("Jolette"), a company formed to acquire underdeveloped acreage in the North Dakota Bakken area. In August 2005, we purchased all the assets of Jolette at their book value of $4.5 million. These assets consisted of undeveloped acreage and one producing well in the North Dakota Bakken area.
Hamm presented at least nine other filings between March 2006 and May 2007 which Arnall did not dispute contained the same information. However, she claimed the Prospectus was misleading, because it did not alert Mineral Acquisitions was dissolved. She also argued her cause of action did not begin to accrue because she was not aware at the time that she was to be deprived of her rightful share of the value of assets transferred to CRI.
¶45 We are unpersuaded by these arguments. The SEC filings are sufficient to apprise Arnall of a potential claim as a member of Mineral Acquisitions that she was deprived of the market value of Jolette's leases, if they served as actual or constructive notice.
[21] On summary judgment, Arnall did not dispute, in response to Hamm's proposed statements of undisputed facts, that she had access to and was familiar with "all" public filings and documents of CRI. Her admission supports the trial court's determination that Arnall had actual notice of facts supporting her claims related to transfer of Jolette's assets at book value by 2005.
¶46 Arnall is correct that the SEC filings do not alert that Mineral Acquisitions was dissolved thereafter. However, Arnall did not dispute that Mineral Acquisitions filed articles of dissolution with the Secretary of State, though she disputed they were valid. Those filings were required by public law to be kept, involved Arnall's interest in Mineral Acquisitions, regarding the very transaction at hand (dissolution) and serve as constructive notice to begin the run of the statute of limitations upon her tort claims, if any, arising from dissolution of Mineral Acquisitions. Fidelity & Cas. Co. of N.Y., 1959 OK 139, ¶ 13. See also supra, n.22.
¶47 For similar reasons, we find the trial court did not err by determining the discovery rule and the rule of adverse domination did not apply. The discovery rule "tolls the statute of limitations until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action." Weathers v. Fulgenzi, 1994 OK 119, ¶ 12, 884 P.2d 538 (citation omitted). "In other words, under the discovery rule, the . . . statute of limitations is tolled until such time as a reasonable person under the circumstances of the case would have discovered the injury and resulting cause of action." Id. "Consequently, the rule does not apply to a plaintiff who was aware of the wrong done to them." Id. Arnall's actual and/or constructive knowledge addressed above is dispositive of her reliance on the discovery rule as a matter of law.
¶48 Similarly, Arnall did not raise a dispute of material facts necessary to toll her claims under the "adverse domination" rule. "It is settled law that when a statutory bar of limitation is properly invoked, the burden devolves upon the party seeking to avoid its effect to show the fact or acts which operate to either arrest, suspend, toll or waive the limitation period." Beatty v. Scott, 1961 OK 140, ¶ 5, 362 P.2d 699.
¶49 "Adverse domination is an equitable doctrine which tolls statutes of limitations for claims by corporations against its officers, directors, lawyers and accountants while the corporation is controlled by those acting against its interest." Resolution Trust Corp v. Grant, 1995 OK 68, ¶ 4, 901 P.2d 807. "It applies only in the context of an attempt to avoid the bar of statute of limitations on a cause of action by a corporation against its wrongdoing officers and directors." Id. The doctrine rests on the presumption that "those who engage in fraudulent activity likely will make it difficult for others to discover their misconduct," and therefore applies in Oklahoma only in situations involving fraudulent conduct. Id. at ¶¶ 12-13.
¶50 Arnall asserted a claim for actual or constructive fraud based on Hamm's transfer of Jolette's assets for alleged below market value, but she has not offered evidence of any concealment of the transaction (and could not, given public filings). Assuming these allegations may nevertheless serve as a basis to apply the rule, "[t]he application of the doctrine of adverse domination presupposes that there has not been notice sufficient to apprise an interested party of the facts needed to bring about a suit." Id. at n.24. "The proper notice to the appropriate party negates the necessity of application of the doctrine." Id. at n.24. Arnall had notice of the alleged wrongful conduct at issue. Further, the doctrine appears to be only available to the corporation. See Resolution Trust Corp. v. Greer, 1995 OK 126, ¶ 20, 911 P.2d 257.
¶51 Therefore, while Arnall's claims were barred by the doctrine of claim preclusion, we find the trial court did not err by alternately granting summary judgment based on the running of the statute of limitations.
3. Derivative Claims of Mineral Acquisitions
¶52 Arnall also brought derivative claims on behalf of Mineral Acquisitions based on the same transfer of Jolette's assets and dissolution of Mineral Acquisitions as her individual claims. Mineral Acquisitions claimed that, because Mineral Acquisitions was not wound up, it could not be considered dissolved. It contended Arnall should be granted authority to wind-up and distribute Mineral Acquisitions' only asset, Jolette's mineral interests. The trial court held Mineral Acquisitions did not have standing to bring suit because it had ceased to be in good standing with the Oklahoma Secretary of State and was deemed cancelled by operation of law.
¶53 Under the Oklahoma Limited Liability Company Act (OLLCA), an LLC may not bring suit if it is not in good standing, through filing of annual certificates and fees, provided by 18 O.S. 2011, § 2055.2(F). It was undisputed that Mineral Acquisitions filed Articles of Dissolution on June 26, 2006, and made no further filings with the Secretary of State.
¶54 Much of the parties' dispute centers upon whether Mineral Acquisitions was dissolved under section 2012.1(A) thereafter, without winding up. However, the trial court's holding was not based on a determination that Mineral Acquisitions was dissolved, or whether it might exist after dissolution for purposes of winding up. The court determined that Mineral Acquisitions was deemed cancelled three years after its last filing with the Oklahoma Secretary of State, and no reinstatement was sought before Mineral Acquisitions brought suit.
¶55 Dissolution and cancellation of an LLC's Articles of Organization are addressed in 18 O.S. § 2012.1 (2004).[22] At the time Mineral Acquisitions was dissolved, and/or ceased to exist, the statute provided for dissolution and cancellation in one of several ways:
A. The articles of organization shall be canceled upon the dissolution and the completion of winding up of a limited liability company, or as provided in subsection B of this section, or upon the filing of a certificate of merger or consolidation if the limited liability company is not the surviving or resulting entity in a merger or consolidation, or upon the conversion of a domestic limited liability company approved in accordance with Section 2054.2 of this title.
B. The articles of organization of a domestic limited liability company shall be deemed to be canceled if the domestic limited liability company shall fail to pay the annual fee provided in Section 2055.2 of this title or a registered agent fee to the Secretary of State due under Section 2055 of this title for a period of three (3) years from the date it is due, the cancellation to be effective on the third anniversary of the due date.
18 O.S. § 2012.1 (2004)(Emphasis added).[23] 
¶56 Mineral Acquisitions relied on multiple provisions of the OLLCA to assert that an entity is not dissolved until winding up, or that the entity may continue and bring suit after dissolution to carry out winding up. However, even accepting Mineral Acquisitions' interpretation for the sake of argument, the statutes distinguish between dissolution and cancellation. Section 2012.1 clearly contemplated cancellation by operation of law, or following winding up dissolution. Nothing in section 2012.1(B) suspends cancellation of an LLC's articles of organization, or provides the entity continues in existence, pending winding up.

[O]nce three years have passed from the due date for the fee or certificate, the Act plainly provides for a more serious penalty. That date triggers cancellation of the LLC. Indeed, following cancellation, filing the annual certificate is no longer required. 18 O.S.Supp.2004 § 2055.2(B). This indicates the Legislature's intent that cancellation means the LLC no longer exists.
AT&T Advertising, L.P. v. Winningham, 2012 OK CIV APP 521, ¶ 11, 280 P.3d 360. See also In re Midpoint Development, 466 F.3d 1201, 1204 (10th Cir. 2006); In re White, 556 B.R. 489 (N.D. Okla. 2016).
¶57 Only one provision cited by Mineral Acquisitions refers to winding up after cancellation, 18 O.S. Supp. 2011, § 2004(B)(1). That statute provides that an LLC's existence as a separate legal entity "continues until cancellation of the limited liability company's articles of organization and completion of its winding up, if any." However, as acknowledged by the trial court, that language became effective in 2010, after Mineral Acquisitions was deemed cancelled. The 2004 version provided only that the entity continues "until cancellation of the limited liability company's articles of organization." 18 O.S. § 2004 (2004).
¶58 Similarly, the 2010 version of 18 O.S. 2011, § 2037 provides that a "limited liability company continues in existence after dissolution, regardless of whether articles of dissolution are filed, but may carry on only activities necessary to wind up its business or affairs and liquidate its assets under Sections 2039 and 2040 of this title." This language, too, was not found in the prior version of the statute and, in any event, refers to dissolution, not cancellation.
¶59 We agree with the persuasive holding of In re Midpoint Dev., LLC, 466 F.3d 1201, 1206 (10th Cir. 2006), that, under the statutes in effect during the relevant time period, the OLLCA required winding up to be completed before filing articles of dissolution. Thereafter, section 2012.1(A) provides for cancellation of the LLC's articles of organization. We also agree with the trial court's determination that amendments relied on by Mineral Acquisitions do not apply to lend it standing to bring suit now. "Generally, a statute or its amendments will have only prospective effect unless it clearly provides otherwise." Williams Companies, Inc. v. Dunklegod, 2012 OK 96, ¶ 18, 295 P.3d 1107. Further, statutes which are substantive, not procedural or remedial, may not operate retroactively to "create, enlarge, diminish, or destroy vested rights. . . ." of parties afforded by those statutes. See Forest Oil Corp.v. Corporation Com'n of Okla., 1990 OK 58, ¶ 11, 807 P.2d 774; Sudbury v. Deterding, 2001 OK 10, ¶ 19, 19 P.3d 856. "A purely procedural change is one that affects the remedy only, not the right." Forest Oil, 1990 OK 58, ¶ 11. The sections relied upon by Mineral Acquisitions, if interpreted as it urges, negate Mineral Acquisitions' cancellation, and revive its rights and liabilities without further action, after it had already ceased to exist by operation of law, and may not be applied retroactively.
¶60 Additionally, to ascertain legislative intent, we review the statute's language, related statutes, and any subsequent enactments, and construe them to give effect to the whole. See Ashby v. Harris, 1996 OK 70, ¶ 11, 918 P.2d 744. To hold that an LLC cannot be deemed cancelled and ceased to exist unless and until it is wound up wholly negates section 2012.1(B). Such a determination would afford no finality to a defunct LLC or its members and is plainly contrary to the statute's purpose to facilitate cancellation in circumstances other than where the members wind up and dissolve.
¶61 The trial court did not err in its determination that Mineral Acquisitions was cancelled and ceased to exist on June 26, 2009. The issue, therefore, is whether Mineral Acquisitions could nevertheless bring a derivative action. The versions of sections 2012.1 and 2055.2 in effect during the relevant time period did not provide a method to reinstate an entity whose articles of organization were cancelled. We find no authority from the Oklahoma Supreme Court which considers whether an entity may be reinstated, absent statutory authorization. However, persuasive authority considering a similar circumstance suggests that members may seek to nullify or revoke a certificate of cancellation and must do so to acquire standing to pursue a derivative action. See e.g., Meissner v. Yun, 55 N.Y.S.3d 163, 163-64 (N.Y. App. Div. 2017)(plaintiff who never commenced action in jurisdiction where LLC was organized to nullify or revoke its certificate of cancellation lacked standing to assert derivative claim on behalf of LLC); Matthew v. Laudamiel, 2012 WL 605589 (Del. Ch. Feb. 21, 2012)(after cancellation, LLC must be revived by obtaining revocation of certificate of cancellation before bringing suit directly or derivatively by its members). See also Metro Communication Corp. BVI v. Advanced MobileComm Technologies, Inc., 854 A.2d 121 (Del. Ch. 2004)(acknowledging cause of action to apply to nullify a certificate of cancellation, if wound up in violation of applicable law).
[24] 
¶62 Here, neither Mineral Acquisitions nor Arnall, as a 50% member, sought to reinstate Mineral Acquisitions or nullify its cancellation. Mineral Acquisitions did not exist when the underlying action was filed, and did not have standing to bring suit.

¶63 Aside from these issues, we find Mineral Acquisitions' claims are barred, even if it retained standing to sue. The statute of limitations began to run when the party bringing the derivative action on Mineral Acquisitions' behalf, Arnall, had notice of the facts giving rise to her claims, and barred the derivative suit as well. See also Bilby v. Morton, 1925 OK 360, 247 P. 384.
¶64 Further, the disposition of assets in the divorce proceeding precluded claims of Mineral Acquisitions' claims as well. Claim preclusion resolves claims between parties or their privies. "In order for the 'privity' rule to apply, the party in privity must actually have the same interest, character, or capacity as the party against whom the prior judgment was rendered." Hildebrand v. Gray, 1993 OK CIV APP 182, ¶ 6, 866 P.2d 447. Arnall was the only other member of Mineral Acquisitions aside from Hamm, and shared an identity of interest in disposition of its assets and dissolution.
¶65 Neither Arnall nor Hamm, the only two owners of Mineral Acquisitions, raised an objection to treatment of Mineral Acquisitions, or assets ultimately transferred to CRI, as marital property during the divorce. Arnall asserted that the transfer of Jolette's assets, and dissolution of her interest in Mineral Acquisitions should be considered in the equitable division of marital property. Like Arnall's claims, Mineral Acquisitions' claims are barred by claim preclusion as a result of disposition in the divorce case. See e.g., Mosley v. Builders South, Inc., 41 So.3d 806 (Ala. Ct. App. 2010).
¶66 We are free to affirm the trial court on a different rationale than stated in its Order. The trial court did not err in granting summary judgment in favor of Hamm on Mineral Acquisitions' claims.
[25] 
CONCLUSION

¶67 The undisputed material facts demonstrate that the claims of Arnall and Mineral Acquisitions concern marital property and claims of wrongful disposition raised and resolved in the divorce proceeding. The undisputed facts also demonstrate that the claims asserted by both Arnall and Mineral Acquisitions are time-barred, and that Mineral Acquisitions did not have standing to bring derivative claims.
¶68 We affirm the trial court's Order of August 20, 2019, granting summary judgment to Hamm.
¶69 AFFIRMED.
WISEMAN, C.J., and THORNBRUGH, P.J., concur.
FOOTNOTES
[1] Much of the record in the underlying action was filed under seal pursuant to an Agreed Protective Order. These filings, many voluminous, were submitted in over a dozen separate, sealed manilla envelopes. None of the briefing or documents contained therein was stapled or fastened. For future reference, though inside an envelope, pleadings should nevertheless be fastened to facilitate efficient review by the Court, should need arise.
[2] Arnall originally brought a derivative claim on behalf of Jolette, as well as Mineral Acquisitions and Jolette is referenced in the August 20, 2019 order on appeal. However, a Second Amended Petition dropped Jolette as a party on November 7, 2017.
[3] The trial court's order also references that Mineral Acquisitions was deemed cancelled six years before suit was filed, and that Arnall's "breach of contract claim relating to MINERAL ACQUISITIONS' Operating Agreement" must have been brought within five years of Arnall's knowledge of the breach, as an additional grounds for summary judgment.
[4] Though prior case law references this doctrine as "res judicata," more recent authority employs the term "claim preclusion," which we use here.
[5] Order of August 20, 2019 (citations omitted).
[6] Miller refers to "claim." However, the definition afforded above is supplied in Retherford for "cause of action." Retherford went on to state:
As demonstrated by the prior decisions of this Court ... this jurisdiction is committed to the wrongful act or transactional definition of a "cause of action." Thus, no matter how many "rights" of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication. We feel this approach to the concept of a cause of action best accomplishes the goals the idea was originally conceptualized to serve without sacrificing the rights of any party or the public, in the efficient administration of justice, to the interests of either plaintiffs or defendants as a class of litigants.
Retherford, 1977 OK 178, ¶ 13, 572 P.2d 966
[7] Hamm also relied on Garrett v. Gordon, 2013 OK CIV APP 96, 314 P.3d 264, which held that a judgment in a divorce disposing of real property precluded a subsequent quiet title suit concerning the same property brought by the spouse's father. The father was named in, but not served in the divorce action. Garrett concerned additional issues not raised here of whether the determination in the divorce could be binding against the father. Claim preclusion applied to disposition of the property at issue in both actions, though not brought under the same legal theory. Garrett does not expressly address whether separate tort or breach of contract claims similar to Arnall's must be raised in the divorce action, or are precluded by disposition of the property in the divorce action, though that application may be implied.
[8] The Court relied on statutes now modified in part, and recodified as 43 O.S. 2011, §§ 121 and 122. Section 121 provides that the court's divorce decree will confirm "in each spouse the property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his own right." Section 122 provides that "[a] divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party."
[9] Arnall acknowledges she could have brought additional claims in the divorce action, but contends it was not required. See e.g., Roesler v. Roesler, 1982 OK 21, 641 P.2d 550.
[10] Hamm's Summary Judgment Motion, p. 9, at ¶ 31; Arnall's Response, at ¶ 31.
[11] In Kellenberger, the plaintiff argued a consent judgment was void, because it went beyond the jurisdiction of a special judge to rule upon issues outside of the forcible entry and detainer action the judge was authorized by statute to handle. The Court stated, "[t]his argument overlooks the scheme of distribution of power to the District Court in Oklahoma. The District Court has jurisdiction in all civil cases. For administrative purposes, certain of those cases are assigned by statute to special judges while others are assigned to associate or district judges." Id. at ¶ 10 (emphasis in original). "However all the judges are judges of the district court and the statutory allocation of cases among them is not accomplished by limiting the jurisdiction of the special judge or others but by merely designating the cases he may handle as a matter of administrative convenience." Id. "Consequently in the absence of objection, any judgment rendered by a special judge which could have been rendered by the district court is valid." Id.
[12] Arnall's briefing on summary judgment argued the discovery rule, but did not raise or address the issue of adverse domination. Hamm raised that issue preemptively in his briefing, arguing it did not apply. We address the issue because the trial court found in Hamm's favor on that issue, and Arnall has now raised it as a point of error on appeal.
[13] While these actions concerned a construction contract, we find no Oklahoma Supreme Court authority adopting the discovery rule in breach of contract claims. See also Kiamichi Elec. Co-op. v. Underwood, 1992 OK CIV APP 72, ¶ 6, 842 P.2d 358 (in action for breach of contract, noting that discovery rule applies in tort cases); Goodall v. Trigg Drilling Co., Inc., 1997 OK 74, ¶ 7, 944 P.2d 292 (Summer, J., concurring)("[w]e don't have a 'discovery rule' for breach of contract.")
[14] Second Amended Petition, Count Five.
[15] Arnall is an attorney, and was employed by CRI for a portion of the parties' marriage.
[16] Arnall's Response to Hamm's statements of fact on this issue cite to Arnall's Answer to Hamm's Interrogatory No. 13 in the divorce action. That Answer makes no mention of Arnall's knowledge or lack thereof, but simply lists Hamm's contributions to the value of CRI during the parties' marriage.
[17] Arnall had testified she did not know if she had ever owned stock in a Continental entity, and counsel asked whether she would not have wanted to know that fact. Her answer, though not entirely responsive, was that she did not know of her ownership in Mineral Acquisitions.
[18] Sue Ann Hamm was Arnall's married name.
[19] Arnall's briefing stated that she did not appreciate the import of what she signed, asserting that Hamm commonly placed signature pages before her "to do what most marginally-involved spouses do -- sign them" citing her deposition testimony in the divorce action. However, that testimony does not state that Hamm gave her only the signature pages for matters pertaining to Mineral Acquisitions or support the assertion in her brief. In fact, it states, "Q. So all he ever gave you were signature pages, ma'am . . . ? THE WITNESS: I'm saying there were times I got signature pages throughout our marriage and I signed."
[20] While this presumption can be overcome by fraud, Arnall made no such argument. As referenced supra, n.17, she argued she had no understanding of what she signed and/or that she frequently was presented only signature pages, but did not present evidence she was prevented from reviewing the contents of the agreement she signed.
[21] To establish constructive notice on summary judgment, it must be able to be inferred as a matter of law from established facts. See T.L.I. ex rel. Irick v. Board of County Commissioners of County of Pottawatomie, 2016 OK CIV APP 12, ¶ 25, 376 P.3d 930 (citing Cooper v. Flesner, 1909 OK 137, ¶ 8, 103 P. 1016). Notice may be inferred from "notice of circumstances sufficient to put a prudent [person] upon inquiry as to a particular fact . . . ." T.L.I., 2016 OK CIV APP 12, ¶ 27; Scott v. Peters, 2016 OK 108, ¶ 15, 388 P.3d 699. "In general, where constructive notice has been applied, there has been some circumstance, or circumstances, which should excite inquiry and that inquiry, if diligently pursued would lead to actual notice and knowledge of the facts." T.L.I., 2016 OK CIV APP 12, at ¶ 27 (citing DeWeese v. Baker-Kemp Land Trust Corp., 1940 OK 184, 102 P.2d 884). Further, "[w]here the means of discovering fraud are in the hands of the party defrauded and the defrauding party has not covered up his fraud to the extent that it would be impossible to discover, the party defrauded will be deemed to have notice of the fraud. . . ." Eaves v. Busby, 1953 OK 240, ¶ 17, 268 P.2d 904 (citation omitted). Oklahoma law generally provides that "public records, required by law to be kept, which involve the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud" to set the statute of limitations in motion. Eaves, 1953 OK 240, ¶ 14. See also Fidelity & Cas. Co. of N.Y. v. Board of County Com'rs of Tulsa County, 1959 OK 139, 342 P.2d 547. We agree that SEC filings can serve as constructive notice sufficient to trigger a shareholder's claim for breach of fiduciary duty or fraud. See e.g., Hamilton v. Deloitte, Haskins & Sells, 417 S.E.2d 713 (Ga. Ct. App. 1992); Eckstein v. Balcor Film Investors, 58 F.3d 1162 (7th Cir. 1995); In re Tyson Foods, Inc., 919 A.2d 563 (Del. Ch. 2007); Hutton v. McDaniel, 264 F.Supp.3d 996 (D. Ariz. 2017). We question whether SEC filings of CRI could serve as constructive notice to the shareholder of a separate entity in all cases, absent circumstances to place Arnall on inquiry notice that she should search CRI's records for the transaction, which are not addressed in the record before us. However, Arnall's admission that she was familiar with all of CRI's SEC filings resolves that issue with respect to the transfer of Jolette's assets.
[22] Section 2012.1, in addition to other portions of the OLLCA, was amended in 2008. However, due to a constitutional challenge, those amendments were not effective until 2010.
[23] Section 2012.2 was amended, effective January 1, 2010, to include subpart (C), authorizing a limited liability company whose articles of organization have been cancelled under 18 O.S. § 2055.2(G) to apply for reinstatement. 18 O.S. § 2055.2(G)(2012). These provisions have been moved to 18 O.S. Supp. 2016, § 2055.3. We do not examine whether these statutes may be applied to an entity deemed cancelled in 2009. No reinstatement was sought.
[24] Metro Communications concerned an LLC's failure to comply with a statute requiring it to provide for compensation of claims against the LLC known at the time of dissolution.
[25] Mineral Acquisitions also argued on summary judgment that Hamm should be equitably estopped from furthering a fraud by claiming Mineral Acquisitions is not a legal entity entitled to bring suit. The trial court did not address this argument. We need not reach the issue of whether Mineral Acquisitions, a non-existent entity, can yet have standing to pursue a claim against Hamm in which it no longer has a cognizable interest. "Estoppel is an affirmative plea which must be proved by the party asserting it." Sullivan v. Buckthorn Ranch Partnership, 2005 OK 41, ¶ 30, 119 P.3d 192. Equitable estoppel requires (1) a false representation or concealment of fact; (2) made with knowledge, actual or constructive, of the real facts; (3) to a party without knowledge, or means of knowledge of the truth; (4) with the intent it be acted upon; (5) and which the party to whom it was made relied upon it to his detriment. Id. at ¶ 31. The false representation on which Mineral Acquisitions rests its estoppel argument is the sale of Jolette's mineral interests for book value, and dissolution of Mineral Acquisitions thereafter. These same transactions, and Arnall's notice thereof, triggered the statute of limitations and are also subject to claim preclusion.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 72, 842 P.2d 358, 64 OBJ 30, Kiamichi Elec. Co-op. v. Underwood
Discussed
 1993 OK CIV APP 182, 866 P.2d 447, 65 OBJ 136, Hildebrand v. Gray
Discussed
 1974 OK CIV APP 23, 530 P.2d 574, KELLENBERGER v. GUARANTY L. & INV. CORP, TULSA
Discussed
 2012 OK CIV APP 51, 280 P.3d 360, AT&T ADVERTISING, L.P. v. WINNINGHAM
Cited
 2013 OK CIV APP 96, 314 P.3d 264, GARRETT v. GORDON
Discussed
 2015 OK CIV APP 55, 350 P.3d 170, CHANEY v. ESKRIDGE CHEVROLET
Discussed
 2016 OK CIV APP 12, 376 P.3d 930, T.L.I. v. BOARD OF COUNTY COMMISSIONERS
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1940 OK 184, 102 P.2d 884, 187 Okla. 341, DE WEESE v. BAKER-KEMP LAND TRUST CORP.
Discussed
 1990 OK 58, 807 P.2d 774, 61 OBJ 1765, Forest Oil Corp. v. Corporation Com'n of Oklahoma
Discussed at Length
 1992 OK 140, 840 P.2d 619, 63 OBJ 2931, Samuel Roberts Noble Foundation, Inc. v. Vick
Discussed
 2001 OK 10, 19 P.3d 856, 72 OBJ 365, SUDBURY v. DETERDING
Discussed
 1937 OK 247, 67 P.2d 967, 180 Okla. 93, FELAND v. HIGH
Discussed at Length
 2001 OK 24, 20 P.3d 818, 72 OBJ 824, KINZY v. STATE ex. rel. OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM
Discussed
 1994 OK 119, 884 P.2d 538, 65 OBJ 3676, Weathers v. Fulgenzi
Discussed
 1997 OK 74, 944 P.2d 292, 68 OBJ 2076, GOODALL v. TRIGG DRILLING COMPANY, INC.
Discussed
 1953 OK 240, 268 P.2d 904, EAVES v. BUSBY
Discussed at Length
 2001 OK 94, 40 P.3d 463, 72 OBJ 3283, BARKER v. STATE INS. FUND
Discussed
 1959 OK 139, 342 P.2d 547, FIDELITY & CAS. CO. OF N.Y. v. BD. OF CTY. COM'RS
Discussed at Length
 1961 OK 140, 362 P.2d 699, BEATTY v. SCOTT
Discussed
 1909 OK 137, 103 P. 1016, 24 Okla. 47, COOPER v. FLESNER
Discussed
 1968 OK 84, 442 P.2d 319, JONES v. JONES
Discussed
 1995 OK 68, 901 P.2d 807, 66 OBJ 2131, Resolution Trust Corp. v. Grant
Discussed
 1995 OK 114, 905 P.2d 797, 66 OBJ 3485, Stephens v. General Motors Corp.
Discussed
 1995 OK 126, 911 P.2d 257, 66 OBJ 3566, Resolution Trust Corp. v. Greer
Discussed
 2003 OK 20, 65 P.3d 624, FEIGHTNER v. BANK OF OKLAHOMA, N.A.
Discussed
 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIP
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1996 OK 70, 918 P.2d 744, 67 OBJ 1932, Ashby v. Harris
Discussed
 2009 OK 65, 222 P.3d 21, KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed
 1925 OK 360, 247 P. 384, 119 Okla. 15, BILBY v. MORTON
Discussed
 2012 OK 96, 295 P.3d 1107, WILLIAMS COMPANIES, INC. v. DUNKELGOD
Discussed
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 1977 OK 178, 572 P.2d 966, RETHERFORD v. HALLIBURTON CO.
Discussed at Length
 2016 OK 108, 388 P.3d 699, SCOTT v. PETERS
Discussed
 2000 OK 10, 2 P.3d 888, 71 OBJ 495, Wille v. GEICO Casualty Co.
Discussed
 1982 OK 21, 641 P.2d 550, Roesler v. Roesler
Discussed
 1926 OK 664, 249 P. 136, 121 Okla. 179, MAYFIELD v. FIDELITY STATE BANK
Cited
 1926 OK 665, 249 P. 153, 121 Okla. 180, MIRACLE v. DIXON
Cited
 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed at Length
 1984 OK 43, 683 P.2d 535, Ross v. City of Shawnee
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 95, Limitation of Other Actions
Cited
Title 18. Corporations
 Cite
Name
Level

 18 O.S. 2012.1, Cancellation of Articles of Organization
Discussed
 18 O.S. 2055.2, Annual Certificate for Domestic Limited Liability Company and Foreign Limited Liability Company
Discussed at Length
 18 O.S. 2055.3, Reinstatement of a Limited Liability Company
Cited
 18 O.S. 2004, Filing the Articles of Organization
Discussed
 18 O.S. 2037, Dissolution
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 123, Jurisdiction of Special Judges
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 121, Restoration of Maiden or Former Name - Alimony - Property Division
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA